200 June 29, 2023 No. 17

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

AARON CHRISTOPHER LEE,
*Petitioner on Review.*

(CC 18CR62116) (CA A171927) (SC S069654)

On review from the Court of Appeals.*

Argued and submitted March 9, 2023, at University of Oregon School of Law, Eugene, Oregon.

Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Peenesh Shah, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong and James, Justices, and Walters, Senior Judge, Justice pro tempore.

JAMES, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and this case is remanded to the circuit court for further proceedings.

_____
* Appeal from Linn County Circuit Court, David E. Delsman, Judge. 319 Or App 191, 509 P3d 689 (2022).

**JAMES, J.**

An informant told law enforcement that a person named "Tom Collins" was dealing heroin from a residence in Albany, Oregon. Detectives planned to utilize the informant in executing a controlled buy (a law enforcement informant's purchase of drugs) at the residence. However, rather than relying on the observations and results from that controlled buy to subsequently apply for a warrant, the detectives applied for, and obtained, a search warrant for the residence that anticipated that controlled buy. The state argues that the warrant at issue here is an "anticipatory warrant" of the type approved, for purposes of the Fourth Amendment to the United States Constitution, by the United States Supreme Court in *United States v. Grubbs*, 547 US 90, 126 S Ct 1494, 164 L Ed 2d 195 (2006). As *Grubbs* defined them, anticipatory warrants are "'based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.'" 547 US at 94 (quoting Wayne R. LaFave, 2 *Search and Seizure* § 3.7(c), 398 (4th ed 2004)). According to the state, the reasoning underlying *Grubbs* is equally persuasive in the factual context presented here and in the context of Article I, section 9, of the Oregon Constitution; thus, the state argues, we should affirm the Court of Appeals, which found such "anticipatory warrants" lawful. Defendant disagrees and argues that anticipatory warrants are incompatible with Article I, section 9.

As we explain, we decline to reach the constitutional question that the parties present, because we conclude that Oregon's statutory warrant requirements, including ORS 133.555(2) and ORS 133.545(6), permit us to resolve this case without reaching that question. Under ORS 133.555(2), a judge may issue a warrant only when "the basis of the record made before the judge" establishes that "there *is* probable cause to believe that the search will discover things specified in the application" and the warrant application satisfies the requirement in ORS 133.545(6) that it "particularly set[] forth the facts and circumstances tending to show that the objects of the search *are in* the places, or in the possession of the individuals, to be searched." (Emphases added.) The affidavit in support of the warrant here failed

to comply with the requirements of ORS 133.545(6). As a result, the warrant issued in defendant's case did not comply with ORS 133.555(2), and the trial court erred in denying defendant's motion to suppress, pursuant to ORS 133.673(1). Accordingly, the decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and this case is remanded to the circuit court for further proceedings.

## BACKGROUND

The material facts are undisputed. Detective Davis worked for the Albany Police Department. Sometime in late November or early December of 2016, Davis interviewed an individual who was facing criminal charges in Linn County. The individual "had provided information leading to the seizure of dealer quantities of multiple types of narcotics within the past year" and had been deemed a confidential reliable informant. That person was willing to provide information in exchange for consideration on his pending criminal matter. Specifically, that informant implicated a person—Collins—and "referenced a location for heroin sourcing" at a specific address on Marion Street in Albany.

On December 2, 2016, a detective from the Lebanon Police Department, McCubbins, informed Detective Davis that an officer had arrested someone named Quinlan the previous day for a parole violation. Like the original informant, Quinlan desired to serve as an informant in exchange for a reduction in his sentence. He told Detective McCubbins that "his primary source of heroin" was Collins at the Marion Street address.

Detective Davis drove past the residence, which he knew from the Linn County Assessor's Office that Collins and another person owned. Davis observed a pickup truck parked in the driveway that was registered to the same people. However, detectives observed no specific activity consistent with drug dealing. Davis then spoke with Quinlan, who identified Collins from a photograph. Quinlan told Davis that he had purchased heroin from Collins at the Marion Street address "about twice a week for the past four months." He also stated that he had "purchased 1/4 ounce increments of the drug in the past for $325." Law enforcement had not utilized Quinlan as an informant previously.

Quinlan agreed to do "a controlled buy of heroin—that is, the purchase of drugs by an informant for law enforcement —from" Collins at the Marion Street address in exchange for consideration on pending criminal charges and his pending parole violation.

Detective Davis submitted a warrant application with the bolded header: "Anticipatory Search Warrant Requested." That application asked for "an anticipatory search warrant if the following factors are met:

"• [Quinlan] is searched and found not to possess any money other than narcotics investigative buy monies furnished by the Albany Police Department.

"• [Quinlan] is continuously surveilled to go directly to [the Marion Street address in] Albany, Linn County, Oregon by law enforcement officers.

"• Surveillance on [the Marion Street address] is constant until [Quinlan] emerges from [that address] and is taken back into custody by law enforcement officers.

"• [Quinlan] is searched by law enforcement officers and found in possession of field tested presumptive positive heroin, and found to no longer be in possession of narcotics investigative buy monies previously furnished by the Albany Police Department."

The trial court issued the warrant the same day. The court incorporated the four identified triggering events and conditioned execution of the warrant on law enforcement's assessment that all four events had occurred. The warrant further provided that, if the triggering events occurred, the officers were to execute the warrant immediately.

The detectives executed the controlled buy and, concluding that the triggering events had occurred, waited until Collins left the residence to arrest him and execute the search warrant. In executing the warrant, law enforcement discovered over 70 grams of heroin, $300 in cash, drug records, packaging materials, scales, firearms, and stolen property.

Defendant was present at the residence when the warrant was executed. Police interviewed others present, who reported that defendant had been "a party to the drug deal."

Defendant had a backpack in which police found a firearm and methamphetamine. Defendant admitted having been in the residence and present at the scene of the transaction but denied any involvement. Ultimately, the state charged defendant with unlawful delivery of heroin, ORS 475.850; unlawful possession of methamphetamine, ORS 475.894; felon in possession of a firearm, ORS 166.270(1); and felon in possession of a restricted weapon, ORS 166.270(2).

Before trial, defendant filed a motion to suppress evidence derived from the search warrant, relying on ORS 133.545 as well as the state and federal constitutions. The trial court denied the motion, ruling:

> "I have reviewed the documents provided, and I don't find a basis for concluding that the Oregon Constitution's protections against unreasonable search and seizure are significantly different than—or different at all from the United States Constitution with regard to this particular factual setting.
>
> "So, I do find, based on the federal case law and the fact that Oregon's constitutional provisions are identical to the federal constitutional provisions, that an anticipatory warrant is not forbidden based on constitutional principles.
>
> "I do find that when a warrant is procured in the manner as set out in *U.S. v. Grubbs*, that an anticipatory warrant is valid under the Oregon Constitution."

On appeal, defendant challenged the trial court's ruling, citing ORS 133.545 but confining his arguments to Article I, section 9. The state argued, in part, that nothing "prohibits a warrant based on probable cause that evidence *will* be present after a future event occurs." (Emphasis in original.) The Court of Appeals affirmed the trial court in a divided opinion that did not address the statute. *State v. Lee*, 319 Or App 191, 509 P3d 689 (2022). The majority reviewed *Grubbs*, as well as state courts' treatment of anticipatory warrants under state constitutions. *See, e.g.*, *Pennsylvania v. Glass*, 562 Pa 187, 192 nn 3 & 4, 754 A2d 655, 658 nn 3 & 4 (2000) (surveying federal and state approaches to anticipatory warrants). The majority concluded that "[t]he text of and historical context for Article I, section 9, does not foreclose

the concept or use of anticipatory warrants, and *** when adhering to the strictures applicable to all warrants, anticipatory warrants are permissible under Article I, section 9." *Lee*, 319 Or App at 203.

Having concluded that Article I, section 9, did not categorically prohibit anticipatory warrants, the majority in the Court of Appeals then turned to the question of whether the particular warrant in this case established probable cause to search, and concluded that it did:

> "We conclude that the affidavit contained sufficient information to establish probable cause that the controlled buy would return evidence. ***
>
> "*****
>
> "In consideration of all of the information provided in the affidavit, there were sufficient indicia of credibility of the informants and the reliability of information provided to conclude that there was probable cause that the controlled buy would yield contraband or evidence."

*Id*. at 205-06.

Judge Mooney dissented. She questioned whether Article I, section 9, of the Oregon Constitution might require more than the Fourth Amendment, noting, "Oregonians have a long history of providing greater protection of certain fundamental rights under the state constitution than the federal constitution provides. I do not think we should settle for less here." *Id*. at 207 (Mooney, J., dissenting).

We allowed review. Before this court, defendant argues that Article I, section 9, prohibits anticipatory warrants. Defendant argues that the requirements of Article I, section 9, are "reflected" in ORS 133.545(6), which defendant cites, with emphasis:

> "ORS 133.545(6) explicitly requires that supporting affidavits 'shall *** particularly set[] forth the facts and circumstances tending to show that the objects of the search *are in the places, or in the possession of the individuals, to be searched*.' (Emphasis added.)"

The state, in response, argues that anticipatory warrants have been widely accepted nationally, and points in particular to the analysis in *Grubbs*. Having set forth that

procedural background and the issue as the parties present it, we turn to the merits.

## ANTICIPATORY WARRANTS

Throughout the life of this case, the parties and the lower courts have labeled the warrant here as an "anticipatory warrant." The warrant application itself contains the bolded header "Anticipatory Search Warrant Requested." The meaning of that term is not obvious. Accordingly, for the benefit of the reader, and to properly contextualize the use of that term and the parties' arguments about the legality of such warrants, we think it is helpful to briefly explore their history.[1]

Anticipatory warrants "anticipate" some component of probable cause to search. Probable cause to search exists at the intersection of four things: criminality, evidentiary value, location, and time. As Professor LaFave summarizes:

> "Probable cause to search * * * ordinarily may be said to exist only if it is established that certain identifiable objects are probably connected with certain criminal activity and are probably to be found at the present time in a certain identifiable place."

Wayne R. LaFave, 2 *Search and Seizure* § 3.7, 455 (6th ed 2020). Accordingly, police officers may be able to establish that it is more likely than not that a crime occurred, but if they cannot establish that certain objects have an evidentiary value that connects the objects to the crime, the officers will not have probable cause to search for those items. Similarly, if police officers can establish that it is more likely than not that a crime occurred, and can reasonably connect certain objects to that crime, but cannot establish that it is more likely than not that those objects are located at the place of the requested search, then the officers will not have probable cause to search that location.

---

[1] The treatment of anticipatory warrants has developed in a body of law most frequently concerned with their constitutionality. Because we are deciding this issue on statutory, and not constitutional grounds, we present this background only as context for anticipatory warrants as a concept. We are not called upon to, and explicitly do not, consider the constitutional analyses of these cases.

Connecting criminality, evidentiary value, and location is the fourth aspect: time. For example, the passage of time may render it unlikely that certain evidence will remain at a location—a principle known as staleness. Alternatively, it is possible that items will be, but are not yet, at the location the police seek to search. As we explain, anticipatory warrants first arose to address that potential circumstance.

The concept of an anticipatory warrant, although not the label, first arose in 1969, in *United States ex rel. Beal v. Skaff*, 418 F2d 430 (7th Cir 1969). *Beal* involved a package of marijuana that federal officials had intercepted in the mail. *Id.* at 432. Law enforcement identified the occupant of the address on the package as Beal, then arranged for the package to be delivered at "12:34 P.M., on October 24, 1967, by carrier delivery to said premises." *Id.* They also obtained a warrant, prior to the delivery, to search Beal's home once the package was delivered. *Id.*

Following the search, the defendant challenged the warrant on the grounds that "the district attorney did not allege that marijuana was on the premises to be searched, but only that it 'will be' on those premises at 12:34 that day." *Id.* Therefore, the defendant argued, "since there were no facts sufficient to support a belief that an offense 'has been or is being committed,' the warrant violated the Fourth Amendment guarantee that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation * * *.'" *Id.* (footnote omitted).

The Seventh Circuit rejected Beal's challenge without lengthy analysis. The court approached the issue as essentially one of staleness, ultimately holding:

> "[T]here was probable cause to believe that the parcel would be delivered 19 minutes from the time of issuance, and probable cause to believe that the warrant, when executed forthwith, could not be executed until after such delivery took place. There was, then, no danger that the property seized would be other than that specified in the affidavit upon which the warrant was issued."

*Id.* at 433.

The first use of the term "anticipatory warrant" appears to have been in 1977, in *State v. Mier*, 147 NJ Super 17, 19, 370 A2d 515, 516 (App Div 1977):

> "The issue for determination is whether a search warrant is valid when issued on an affidavit which alleges that the contraband is en route from a foreign country through the mail and has not as yet reached the addressee in New Jersey. Is an anticipatory warrant valid under such circumstances when issued prior to receipt at the destination to be searched?"

Over time, legal scholars came to express a common understanding of anticipatory warrants:

> "Although the specific requirements vary by circuit, anticipatory search warrants generally involve authorities' intercepting contraband in transit, either through the mail or by automobile. They then ask a magistrate judge to issue a search warrant based on probable cause that the contraband will reach its destination in a 'controlled delivery,' and will be waiting at the place to be searched at the time of the search. Usually, the authorization to execute the warrant will be conditioned upon the occurrence of a specific event, sometimes referred to as a 'triggering event,' such as the delivery of the package containing the contraband and its introduction into the premises specified in the anticipatory search warrant."

Joshua D. Poyer, United States v. Miggins*: A Survey of Anticipatory Search Warrants and the Need for Uniformity Among the Circuits*, 58 U Miami L Rev 701, 701 (2004) (footnotes omitted); *see also* Andrew M. Belt, *Anticipatory Search Warrants: State and Federal Applications and Their Future in Maryland*, 28 U Balt L Rev 337, 337-38 (1999) ("Anticipatory warrants are used to seize contraband delivered by one of three means: (1) a controlled delivery, where a police officer poses as a delivery person and transfers the contraband; (2) an observed delivery, where customs officials intercept the contraband and notify the police who observe the contraband as it is delivered; and (3) an uncontrolled delivery where police receive a tip that contraband will be delivered, but are unaware as to who will be making the delivery.").[2]

---

[2] A few cases addressed anticipatory warrants in the context of controlled buys. *See, e.g.*, *People v. Sousa*, 18 Cal App 4th 549, 559-60, 22 Cal Rptr 2d 264,

Although generally accepted, some jurisdictions conditioned anticipatory warrants upon certain predicates; most common was the requirement of a governmental showing of a "sure course." As the Ninth Circuit explained, "[a]n affidavit in support of an anticipatory search warrant must show that the property sought is on a sure course to the destination targeted for the search." *U.S. v. Ruddell*, 71 F3d 331, 333 (9th Cir 1995); *see also U.S. v. Ricciardelli*, 998 F2d 8, 13 (1st Cir 1993) ("The sure course standard functions as a proxy for the actual presence of the contraband at the locus to be searched. It offers the magistrate a trustworthy assurance that the contraband, though not yet on the site, will almost certainly be located there at the time of the search, thus fulfilling the requirement of future probable cause."); *U.S. v. Dornhofer*, 859 F2d 1195, 1198 (4th Cir 1988) ("[A]n anticipatory warrant is permissible where the contraband to be seized is on a sure course to its destination, as in the mail." (Internal citations and quotation marks omitted.)).

Not all state courts to consider the issue upheld anticipatory warrants, however. Some concluded that the warrants violated a particular state statute. *See, e.g.*, *State v. Gillespie*, 530 NW2d 446, 448 (Iowa 1995) (holding that anticipatory warrants violated Iowa statute); *People v. Poirez*, 904 P2d 880, 883 (Colo 1995) (holding that anticipatory warrants violated Colorado statute). In fact, the development of anticipatory warrants in the 1970s and 1980s prompted an amendment to the Federal Rules of Criminal Procedure (FRCrP) explicitly to avoid a potential federal statutory problem. Prior to 1990, FRCrP 41 stated:

---

271 (1993) (upholding anticipatory warrant where "there was a clear showing that [the defendant] would be involved in an illegal drug purchase, which would take place in the immediate future"); *Commonwealth v. Coleman*, 574 Pa 261, 279, 830 A2d 554, 565 (2003) (upholding anticipatory warrant based on an affidavit showing that law enforcement "did not randomly target [the defendant's] residence for a controlled drug buy in the hope of generating probable cause, but instead explained *** the specific basis for their belief that drugs were being sold from his particular residence"); *see also U.S. v. Penney*, 576 F3d 297, 313 (6th Cir 2009) ("[A]lthough the triggering event did not explicitly require that contraband be delivered to [the defendant's] residence, the issuing magistrate had a substantial basis to conclude that the affidavit established a nexus between on-going drug trafficking and [the defendant's] residence, and that there was a fair probability that evidence of drug trafficking would be found when the triggering event took place.").

"A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property or person sought *is located*, upon request of a federal law enforcement officer or an attorney for the government."

(Emphasis added.)

The Supreme Court, with approval of Congress, amended FRCrP 41 in 1990 to read:

"[A] search warrant authorized by this rule may be issued (1) by a federal magistrate, or a state court of record within the federal district, for a search of property or for a person within the district * * *."

FRCrP 41(a) (1990). The 1990 advisory committee note to FRCrP 41(a) (1990) explains the reason for the amendment as follows:

"Rule 41(a)(1) permits anticipatory warrants by omitting the words 'is located,' which in the past required that in all instances the object of the search had to be located within the district at the time the warrant was issued. Now a search for property or a person within the district, or expected to be within the district, is valid if it otherwise complies with the rule."

FRCrP 41(a) Advisory Committee note to 1990 amendment.

In 2006, the United States Supreme Court took up the issue of anticipatory warrants in *Grubbs*. There, the defendant contacted a website he believed could provide him a videotape containing child pornography. 547 US at 92. That website was, in fact, operated by an undercover postal inspector. *Id*. Federal officers arranged for the videotape to be delivered to Grubbs, at his home, via United States Postal Inspector delivery. *Id*. In anticipation of delivering the contraband to Grubbs, agents applied to a magistrate judge for a warrant. Their affidavit stated:

"'Execution of this search warrant will not occur unless and until the parcel has been received by a person(s) and has been physically taken into the residence * * *. At that time, and not before, this search warrant will be executed by me and other United States Postal inspectors, with

appropriate assistance from other law enforcement officers in accordance with this warrant's command.'"

*Id*. (alteration in original, internal citation omitted).

At the outset of the Court's analysis, it defined anticipatory warrants:

"An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.' 2 W. LaFave, *Search and Seizure* § 3.7(c), p. 398 (4th ed 2004). Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.' * * * If the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location; by definition, the triggering condition which establishes probable cause has not yet been satisfied when the warrant is issued."

*Id*. at 94.

The Court then explained that, for purposes of the Fourth Amendment, "the probable-cause requirement looks to whether evidence will be found *when the search is conducted*." *Id*. at 95 (emphasis in original). Accordingly, the Court reasoned that, for the Fourth Amendment, all warrants are anticipatory in some degree: "Anticipatory warrants are, therefore, no different in principle from ordinary warrants. They require the magistrate to determine (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed." *Id*. at 96 (emphases in original).

From that brief history we see that, as typically employed, law enforcement officers seek anticipatory warrants when they cannot attest that all of the facts necessary to establish probable cause presently exist, most often when they cannot say that it is more likely than not that evidence is currently at the location to be searched. With that history and understanding of anticipatory warrants in mind, we now turn to the warrant at issue here and applicable Oregon statutes.

## THE WARRANT

The warrant in this case does not fit neatly into the typical anticipatory warrant mold. Officer Davis's application for the warrant explicitly asked for an "Anticipatory Warrant," implying that he did not believe that he had probable cause to search at the time of the application. The application does not specify what particular aspect of probable cause—criminality, evidence, location, or time—was absent when Davis obtained the warrant, but the state acknowledged to the trial court that the facts alleged in the application were insufficient to establish probable cause to search:

> "[A]t the point in time that it's signed by the judge, is there enough there without paying attention to what's happened? No. But then you have that triggering event, and so the judge, you know, presumes, okay, if that is satisfied, is there probable cause here? And the answer is yes in this case. And so, you know, that's the only difference in the anticipatory warrant."

At oral argument, we asked the state for confirmation that it was "not contending that there was probable cause at the time the warrant issued to believe that drugs would be found." The state replied that "[t]here was probable cause to believe that drugs would be found when the warrant was executed." Thus, we do not understand the state to argue that the warrant the officer sought was not anticipatory. Indeed, since trial, and through appeal, the state has consistently labeled the warrant "anticipatory" and cited *Grubbs* as authority for its constitutionality. We understand the state to be acknowledging that, at the time of warrant application, the officer could only aver that at some future time—after the triggering event—but not presently, it would be more likely than not that evidence of a crime would be found at the residence. With that understanding, we turn to Oregon statute.

In doing so we note that although defendant based his motion to suppress in the trial court, in part, on ORS 133.545, and although that statute was cited both to the Court of Appeals and repeatedly in briefing to this court, neither it, nor other relevant statutes, have been the focus of the parties' arguments. Instead, the parties have focused

on the Oregon Constitution, and defendant has argued that Article I, section 9, is "reflected in" ORS 133.545(6). We think it prudent, however, as is our usual practice, to begin with the applicable statutes. "The need to face a constitutional issue arises, if at all, only after the court determines what ordinary laws authorize, require or forbid." *Burt v. Blumenauer*, 299 Or 55, 70, 699 P2d 168 (1985). "[I]f statutory sources of law provide a complete answer to [a] legal question that a case presents, we ordinarily decide the case on that basis, rather than turning to constitutional provisions." *Rico-Villalobos v. Giusto*, 339 Or 197, 205, 118 P3d 246 (2005). "This court follows that decisional principle even if the parties attempt to force the court to decide a constitutional question by confining their arguments to matters of constitutional law, rather than addressing arguably dispositive aspects of subconstitutional law." *State v. Barrett*, 350 Or 390, 398, 255 P3d 472 (2011); *see also Dept. of Rev. v. River's Edge Investments, LLC*, 359 Or 822, 836, 377 P3d 540 (2016) (concluding the same and citing Wallace P. Carson, Jr., *"Last Things Last": A Methodological Approach to Legal Argument in State Courts*, 19 Willamette L Rev 641, 643-45, 654 (1983) (advocating for a legal analysis in sequence beginning with administrative rules, then statutes, then state constitution, then federal law, then federal constitution)).

## OREGON STATUTORY WARRANT REQUIREMENTS

In Oregon, warrants and warrant applications are governed not only by constitutional provisions, but by statute as well. ORS 133.525 to 133.615 govern, in part, warrant application and issuance. The question presented is whether the legislature intended to permit, within that statutory scheme, the anticipatory warrant at issue in this case. In considering the applicable statutes, we consider the text, context, and legislative history to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

ORS 133.545(1) provides that only a judge may "issue[]" a warrant.[3] ORS 133.545(5) and (6) discuss the

---

[3] In this context we use the terms magistrate and judge synonymously.

requirements for warrant applications. ORS 133.545(8)(b) discusses procedures for transmission when a court "issues a warrant upon an application." And ORS 133.545(1) makes clear that issuance of a warrant is distinct from execution of a warrant. *See, e.g.*, *State v. McCarthy*, 369 Or 129, 151, 501 P3d 478 (2021) ("Thus, the court envisioned a process in which officers would call magistrates who would determine whether the officers had probable cause to search and, if the officers did, the magistrates would immediately issue electronic warrants."). A warrant "issues" no later than when a magistrate signs and transmits it to law enforcement.

ORS 133.555(2) conditions the issuance of a warrant upon the presentation of an application that complies with ORS 133.545. If that condition is met, and if the judge concludes that "there is probable cause to believe that the search will discover things specified in the application and subject to seizure under ORS 133.535," then a warrant is statutorily authorized. ORS 133.555(2). The use of the future tense here reflects a recognition that the search itself—the execution of the warrant—will always occur *after* the judge issues the warrant.

ORS 133.545(6) defines, in part, the requirements for a search warrant application:

> "The application shall consist of a proposed warrant in conformance with ORS 133.565 [specifying contents of search warrant], and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search *are in* the places, or in the possession of the individuals, to be searched."

(Emphasis added.) As is apparent on its face, ORS 133.545(6) speaks to the present, not the future. "Are," as in the term "are in," is the present tense second-person singular, or present tense plural, of the verb "to be." *Webster's Third New Int'l Dictionary* 115 (unabridged ed 2002).

Similarly, ORS 133.565(2) specifies the five things that a warrant "shall state, or describe with particularity": (1) the identity of the judge issuing the warrant, (2) the date the warrant was issued; (3) the name of the person to be searched or the location and designation of the premises or

places to be searched; (4) the things constituting the object of the search and authorized to be seized; and (5) the period of time within which the warrant is to be returned. And ORS 133.575(1) provides that a search warrant "may be executed only within the period and at the times authorized by the warrant and only by a police officer." Read together, those statutes demonstrate that the legislature was very clear and specific about the need for averments to demonstrate the existence of probable cause to search at the time of issuance, and, particularly, that the averments establish that the objects of the search are in the location to be searched at that time.

The legislative history does not persuade us that the legislature had a different intent. ORS 133.545 was originally enacted in 1973 as part of the codification of criminal law in Oregon and was drafted by the Criminal Law Revision Commission. Or Laws 1973, ch 836, § 83; Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 133, 71-73 (Nov 1972). The commission placed section 133, "Issuance of search warrant" (what became ORS 133.545), and the relevant wording—that the objects to be searched "are in" the places or in the possession of the individuals to be searched—(now codified in ORS 133.545(6)) in Article 5 of its report. Commentary § 33 at 69, 71-73. Included with the draft statutory language is commentary from the commission. This court has previously stated that "[l]egislative history includes the commentary to the Oregon Criminal Procedure Code." *State ex rel Turner v. Frankel*, 322 Or 363, 374, 908 P2d 293 (1995). The Commentary does not directly address the choice of the present tense "are," but it does state that it "requires that affidavits be in hand at the inception of the proceedings, so as to discourage frivolous or *speculative* applications." Commentary § 133 at 72 (emphasis added).

The Commentary might be viewed as suggesting that the legislature considered the possibility of magistrates authorizing searches for evidence that is not yet present but that will be present at a future time:

"(3) Facts and circumstances must be asserted to support the conclusion that criminal conduct is being engaged

in or that evidence of crime is contained in the premises *at or very near* the time of the affidavit. * * *

"It is believed that the language in subsection (3) as to content of the application is approximately and necessarily general enough to reflect the present or future stance of the U. S. Supreme Court. This is clearly an area where *there must be considerable play in the joints to allow constitutional interpretation by the courts without freezing into Oregon law a particular holding or view.*"

*Id.* at 73 (emphases added).

The first emphasized phrase—at or very near the time of the affidavit—could be read as indicative of an intent to allow warrants to search for evidence that is not yet at the location to be searched at the time of the affidavit. However, that language may also merely be reflective of the principle of staleness in probable cause—the notion that time may render evidence unlikely to remain at a location. *See, e.g.*, *State v. Henderson*, 341 Or 219, 226, 142 P3d 58 (2006) ("It obviously is true that, in some cases, the passage of time may render formerly sound information stale.").

The second emphasized phrase—leaving "considerable play in the joints to allow constitutional interpretation by the courts without freezing into Oregon law a particular holding or view"—could be read as reflecting a legislative intent to allow future case law developments to inform the meaning of the statute, such that warrant applications that met constitutional requirements as determined by that case law would also satisfy the requirements of the statute. In context, however, we think the better reading is one that permits "play in the joints" as to whether the facts and circumstances set out are sufficient to establish that there is probable cause to search in compliance with ORS 133.555 and ORS 133.545(6).

Ultimately, the plain text of ORS 133.545(6) is dispositive. The essence of an anticipatory warrant, as we understand the parties to use that term in light of the case law discussed above, conflicts with the plain text of ORS 133.545(6), which requires an affidavit to aver facts and circumstances tending to show that objects of the search "*are* in the places" to be searched at the time of the

warrant's issuance, not at the time of the warrant's execution. (Emphasis added.) That wording does not authorize a warrant application that tends to show that objects of the search *will be* in the place to be searched. The language "are in" poses the same tension with anticipatory warrants as the language "is located" posed for purposes of FRCrP 41(a) prior to 1990. However, recognizing that tension, the Supreme Court, with the approval of Congress, amended the federal rules. The Oregon Legislature has not amended ORS 133.545(6).

Where "the text of a statute is truly capable of only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different." *Gaines*, 346 Or at 173. To interpret the statute to permit anticipatory warrants would require us to rewrite the statute to say that "objects of the search are in, [*or will be in*,] the places, or in the possession of the individuals, to be searched." In construing a statute, we will not "insert what has been omitted." ORS 174.010. Accordingly, we conclude that Oregon statute does not permit anticipatory warrants and does not permit the warrant issued in this case.

However, not all statutory violations may result in the exclusion of evidence. ORS 136.432 provides that a court may not exclude "relevant and *otherwise admissible* evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision." (Emphasis added.) In *State v. Thompson-Seed*, 162 Or App 483, 986 P2d 732 (1999), former Justice (then Judge) Landau explored, in considerable depth, the history of ORS 136.432 and concluded that that statute "is construed only to constrain the courts from creating new rules of exclusion and not to repeal existing statutory rules of exclusion." *Id.* at 491. That reasoning is sound. ORS 136.432 itself provides that evidence must be "otherwise admissible," clearly implying the potential for statutory exclusion. ORS 136.432 does not prevent the legislature itself from providing for evidentiary exclusion based on a statutory violation. Rather, the legislature is free to provide avenues for exclusion, either explicitly or implicitly, for some statutes, and not for others. *See, e.g.*, *State v.*

*Powell*, 352 Or 210, 227, 282 P3d 845 (2012) (concluding that "the statute itself requires exclusion").

ORS 133.673 explicitly provides that the statutory requirements for warrants contained in ORS 133.545(6) are enforceable via a motion to suppress:

> "Objections to use in evidence of things seized in violation of any of the provisions of ORS 133.525 to 133.703 shall be made by a motion to suppress which shall be heard and determined by any department of the trial court in advance of trial."

"Motions to suppress evidence are provided for by statute. Statutory grounds for a suppression include noncompliance with ORS 133.545 and 133.555." *State v. Russell*, 293 Or 469, 474, 650 P2d 79 (1982) (footnote omitted).[4] The legislature, having provided a statutory remedy of evidentiary exclusion, has rendered this matter capable of resolution at a subconstitutional level. The warrant in this case, and its application, failed to comply with Oregon statutory requirements, and the evidence obtained pursuant to that warrant must be excluded.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and this case is remanded to the circuit court for further proceedings.

---

[4] We acknowledge that, three months after *Russell*, in *State v. Brock*, 294 Or 15, 22, 653 P2d 543 (1982), we declined to suppress evidence obtained in violation of a nighttime warrant execution under ORS 133.545. In that case, however, we did not consider ORS 133.673, and we are not called upon to reconcile any potential resulting inconsistencies here.