46 June 5, 2024 No. 373

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

OLEGARIO SOTO-SARABIA,
*Defendant-Appellant.*

Jackson County Circuit Court
19CR05560; A178513

Paul D. Moser, Judge pro tempore.

Argued and submitted January 24, 2024.

Kristen Carveth, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Convictions for unlawful possession of heroin and unlawful delivery of heroin reversed and remanded for entry of a judgment of conviction for unlawful delivery of heroin; remanded for resentencing; otherwise affirmed.

Jacquot, J., dissenting.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for unlawful delivery of heroin, ORS 475.850, and unlawful possession of heroin, ORS 475.854(2)(b). He raises two assignments of error. First, defendant argues that the trial court erred in denying his motion to suppress evidence because the search warrant affidavit that led to the discovery of the evidence lacked probable cause. Second, defendant argues that the trial court plainly erred when it failed to merge the possession verdict into the delivery verdict. We reverse and remand for merger and resentencing, and otherwise affirm.

## MOTION TO SUPPRESS

In determining whether an affidavit supported the issuance of a warrant, our review is "based on the facts before the issuing court." *State v. Chamu-Hernandez*, 229 Or App 334, 341, 212 P3d 514, *rev den*, 347 Or 43 (2009). We give "no deference to *the trial court's* findings or conclusions, but we allow all inferences that the *issuing court* may have fairly drawn from the facts in the affidavit * * *." *Id.* (emphases in original). We thus describe the facts consistently with that standard of review.

In December 2018, Officer Dode applied for a warrant to search defendant and his car for evidence of the crimes of delivery, manufacture, and possession of a controlled substance, specifically, heroin. In the affidavit in support of the warrant, Dode stated that within the past 72 hours, a confidential reliable informant (CRI) had purchased a "dealer amount" of heroin from defendant at a predetermined location. Prior to the controlled buy, two officers met with and then followed the CRI to the predetermined location, where they observed defendant arrive in a grey 2011 Honda Accord. Dode further averred that after the CRI met with defendant, the officers followed the CRI back to a designated meeting site, where the officers retrieved the heroin that the CRI had purchased.

Dode explained that within the prior four weeks, the same CRI bought a dealer amount of heroin from defendant in the same manner—at a predetermined location where officers observed defendant arrive in his 2011 Honda Accord.

Dode also discovered that defendant had been arrested for possession of a controlled substance in June 2002.

The affidavit went on to state that Dode has 12 years of experience in law enforcement, including, most recently, one year of working drug investigations. From his training and experience, Dode knows that people trafficking in controlled substances often keep items such as records of their sales, packaging material, cutting agents, and scales, in automobiles, because it "enables the trafficker to quickly depart a residence and ensure that the necessary tools are readily accessible for the purpose of selling or purchasing drugs."

Dode requested "a ten day warrant to identify [defendant's] drug source." Dode sought evidence that included but was not limited to heroin, packaging materials, scales, cutting agents, recipes and books relating to the manufacture and distribution of controlled substances, records of sales, any paperwork that would implicate conspirators, locked containers, and any other items related to the manufacture and distribution of controlled substances, in particular heroin.

A judge signed the search warrant on December 7, 2018. After the judge signed the warrant, the CRI informed Dode that they had arranged another buy with defendant. Six days later, when defendant was on his way to meet the CRI, Dode located defendant's car; another officer stopped the car, with defendant driving. Dode then drove to the location and executed the search warrant.

The officers discovered 44.70 grams of heroin inside a shoe on the backseat floorboard. A user amount is generally less than a quarter of a gram. The state charged defendant with unlawful delivery of heroin and unlawful possession of heroin.

Defendant filed a pretrial motion to suppress evidence, arguing that the affidavit in support of the search warrant failed to establish probable cause. Defendant argued that the facts in the affidavit were stale, noting that the first controlled buy occurred four weeks before the warrant, and that continued possession of heroin is unlikely because heroin is

highly inculpatory, easily moved, and perishable. Defendant also argued that the affidavit failed to establish probable cause because the affidavit did not assert that defendant had additional heroin available for future purchase or that anyone had observed drug paraphernalia in defendant's car.

The state responded that under the totality of the circumstances—two controlled buys involving defendant's car, most recently within 72 hours; the veracity and reliability of the CRI; and Dode's training and experience—the affidavit established probable cause.

The trial court denied the motion. At trial a jury convicted defendant of one count of unlawful delivery of heroin and one count of unlawful possession of heroin.

As he did below, defendant argues that the trial court erred in denying his motion to suppress because the search warrant affidavit did not establish probable cause. That claim of error presents a question of law. *State v. Klingler*, 284 Or App 534, 539, 393 P3d 737 (2017). Search warrants are presumptively valid; thus, it is a defendant's burden to establish that the warrant was not supported by probable cause. *State v. Webber*, 281 Or App 342, 347, 383 P3d 951 (2016).

Probable cause exists when the facts, as set forth in the affidavit, along with any reasonable inferences, could "permit a neutral and detached magistrate to determine that seizable evidence probably would be found at the place to be searched." *State v. Castilleja*, 345 Or 255, 269, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008); *see State v. Castro*, 194 Or App 109, 115, 93 P3d 815 (2004) (the probability standard requires that the information in the affidavit "must be such that a reasonable person could conclude that it is more likely than not that the objects of the search will be found *at the specified location*" (emphasis in original)). We view the affidavit "'in a commonsense, nontechnical and realistic fashion' with 'doubtful cases *** to be resolved by deferring to an issuing magistrate's determination of probable cause.'" *State v. Miller*, 254 Or App 514, 516-17, 295 P3d 158 (2013) (quoting *State v. Wilson*, 178 Or App 163, 167, 35 P3d 1111 (2001)).

*Miller*, in particular, informs the issues on appeal; we thus turn to that case. There, the state charged the defendant with various drug-related offenses (both possession and delivery) after police executed a search warrant on his residence and car and found inculpatory evidence. 254 Or App at 519-20. With respect to the information in the affidavit relevant to the defendant's car, a detective stated that, in three controlled buys, a CRI purchased a "small amount of methamphetamine" from the defendant through an unwitting informant. *Id.* at 517. The first two buys occurred on separate occasions within two weeks preceding the request for the warrant, and the third buy occurred 72 hours before the request. *Id.* at 517-18. In each controlled buy, detectives observed the defendant arrive at an undisclosed location in his black Hyundai and meet with the unwitting informant. *Id.*

The affidavit went on to state that, in the detective's training and experience, "[i]tems of value including drugs, currency, records of sales, or purchase of drugs are often kept in automobiles by persons trafficking in control[led] substances[, which] enables the trafficker to quickly depart a residence and ensure that the necessary tools are readily accessible for the purpose of selling or purchasing drugs." *Id.* at 519 (second brackets in original). The affidavit also stated that the defendant had been convicted in 1977, 1999, and 2000 of drug-related offenses. *Id.* at 517.

On appeal, we upheld the warranted search of the car. *Id.* at 529. We explained that "the affidavit sufficiently substantiates that defendant drove his [car] to each of the controlled buys and that, based on [the officer's] training and experience, '[i]tems of value including drugs, currency, records of sales, or purchase of drugs are often kept in automobiles by persons trafficking in control[led] substances * * *.' The nexus to the vehicle is patent." *Id.*; *see State v. Goodman*, 328 Or 318, 328, 975 P2d 458 (1999) ("Facts derived from training and experience may contribute [the] necessary factual nexus in a determination of probable cause."); *Webber*, 281 Or App at 348 ("[P]robable cause exists only if the affidavit sets forth facts that create a nexus between the place to be searched and the objects to be found.").

With that legal framework in mind, we turn to Dode's affidavit. Similar to the affidavit in *Miller*, the affidavit here established that defendant drove his car to each of the controlled buys and that, based on Dode's training and experience, drugs, drug paraphernalia, and sales records are often kept in automobiles by persons trafficking in controlled substances. In both cases, the most recent controlled buy occurred 72 hours before the warrant was issued, and in neither case did the affidavit contain information that the CRI or anyone else had observed drug paraphernalia or drugs in the defendant's car.

Unlike in *Miller*, this case involved two controlled buys rather than three; defendant had one 15-year-old arrest for a drug-related offense rather than three prior convictions; and defendant sold a dealer quantity of drugs rather than a user quantity. Defendant does not argue that the distinctions between the number of buys or defendant's lack of drug convictions are dispositive, and we did not rely on those factors to reach our holding in *Miller*. Defendant contends, however, that this case is distinguishable from *Miller* because defendant sold "dealer" amounts in the controlled buys rather than user amounts.

In defendant's view, "[a]s a matter of common-sense, it is unlikely that a person carries large quantities of drugs around in his vehicle at all times [because] [i]t is highly inculpatory, more difficult to hide than user amounts, and risky—cars, much more than homes, are subject to police intrusion or criminal break-ins." Defendant also argues that, while it may be reasonable to infer that a person who sells small amounts of drugs out of their car likely keeps drug paraphernalia in their car, that inference is unavailable where a person sells dealer quantities. Thus, defendant argues, because defendant sold dealer rather than user quantities, the affidavit did not establish probable cause.

We disagree. As a threshold matter, the kind of conduct that would be "common sense" where a dealer amount is involved is speculative.[1] More to the point, however, is that

---

[1] We note that, although the affidavit did not specify how much heroin defendant sold in the two controlled buys, when Dode executed the warrant, he found nearly 45 grams of heroin in defendant's car. That quantity was small enough

the dispositive question is whether the affidavit establishes probable cause to believe that there is a connection between defendant and the suspected drug activity, and that evidence of that drug activity will be found in the location that the officer seeks to search. *See Webber*, 281 Or App at 348.

In making that determination, we note that in *Miller*, the defendant's conduct of driving to controlled buys with drugs, combined with the officer's training and experience, was sufficient to establish probable cause that there would be evidence of the distribution of a controlled substance, including drugs and drug paraphernalia, in the defendant's vehicle. *See Goodman*, 328 Or at 328 (an officer's training and experience, when connected to objective facts, may be considered in determining whether probable cause exists).

Here, the objective facts in the affidavit—two controlled buys of heroin out of defendant's car—and the connection between those objective facts and Dode's training and experience that persons who traffic in drugs often keep drugs, drug paraphernalia, and sales records in their cars, established probable cause to believe that evidence of drug activity would be found in defendant's car. The affidavit is thus functionally similar to the one that we upheld in *Miller*.

Moreover, this case is distinguishable from cases in which we have held that, because there was not a nexus between the place to be searched and the objects to be found, the affidavit did not establish probable cause. *See Webber*, 281 Or App at 349 (affidavit in support of warrant to search the defendant's home did not establish probable cause where the defendant's suspected drug activities occurred in locations other than his home; the "absence of objective facts connecting that illegal activity to defendant's home foreclosed the conclusion that the affidavit provided a sufficient nexus to that location"); *Wilson*, 178 Or App at 165, 170 (affidavit to search the defendant's home did not establish probable cause where previous controlled buy occurred at a third-party's home; the affidavit failed to establish a nexus between the place to be searched and the items to be found).

---

that defendant was able to hide it in a shoe. A dealer amount, then, is not necessarily more difficult to hide than a user amount.

Unlike in those cases, where the affidavits did not aver that any drug activity had occurred at the locations to be searched, here the affidavit stated that both controlled buys occurred from defendant's car. Just like in *Miller*, then, the nexus to defendant's car is "patent," and the affidavit established probable cause to believe that, more likely than not, evidence of drug activity would be found in defendant's car. *Miller*, 254 Or App at 529. Thus, "cognizant of the preference for warrants and our concomitant duty to resolve doubtful or marginal cases in favor of that preference," we conclude that defendant did not meet his burden to establish that the warrant was defective. *Webber*, 281 Or App at 358. Accordingly, the trial court did not err in denying defendant's motion to suppress.[2]

## MERGER OF VERDICTS

In his second assignment of error, defendant argues that the trial court plainly erred in failing to merge the possession of heroin verdict and the delivery of heroin verdict. *See State v. Hubbell*, 314 Or App 844, 500 P3d 728 (2021), *aff'd*, 371 Or 340, 537 P3d 503 (2023) (unlawful possession of controlled substances is subsumed in delivery of controlled substances when the guilty verdicts arise out of the same conduct); *see also State v. Serbin*, 324 Or App 792, 801, 527 P3d 794 (2023) (unlawful possession of controlled substances merges with delivery of the same controlled substances when the guilty verdicts arise out of the same conduct because a person cannot deliver controlled substances without at least constructively possessing the controlled substances). The state concedes that the trial court plainly erred and further asserts that we should exercise our discretion to correct that error. We agree with and accept the state's concession and agree that this case is an appropriate one in which to

---

[2] The dissent is concerned that the warrant here is an "'anticipatory warrant' of the type that the Oregon Supreme Court found was not supported by statute in *State v. Lee*, 371 Or 200, 532 P3d 894 (2023)." 333 Or App at 55 (Jacquot, J., dissenting). In the dissent's view, it is less likely that a person selling dealer quantities would keep evidence of drug activity in their car at all times, and thus the affidavit did not establish probable cause to believe that, at the time the warrant was issued, evidence of drug activity would be found in defendant's car. *Id.* at 56. As discussed above, we disagree, and we also note that whether the police executed the warrant immediately or waited for a controlled buy does not affect the analysis of whether the affidavit established probable cause.

exercise our discretion to correct the error. *See State v. Carr*, 319 Or App 684, 690, 511 P3d 432 (2022), *rev den*, 371 Or 771 (2023) (exercising discretion to correct plain error because "raising issue would have been futile because existing law was to the contrary, correction serves the ends of justice, and the error was not harmless" (internal citation omitted)).

Convictions for unlawful possession of heroin and unlawful delivery of heroin reversed and remanded for entry of a judgment of conviction for unlawful delivery of heroin; remanded for resentencing; otherwise affirmed.

**JACQUOT, J.,** dissenting.

I agree with the majority opinion to the extent that it holds that convictions for possession of a controlled substance and delivery of a controlled substance should be merged under the circumstances of this case if both convictions were to stand. I disagree that the facts and reasonable inferences contained in and flowing from the warrant affidavit established probable cause to search defendant's car for the 10 days after the warrant was issued. I also have concerns that the warrant the majority upholds is an "anticipatory warrant" of the type that the Oregon Supreme Court held was not supported by statute in *State v. Lee,* 371 Or 200, 532 P3d 894 (2023). Because the motion to suppress should have been granted, I dissent.

As the majority notes, probable cause is established "when the facts, as set forth in the affidavit, along with any reasonable inferences, could 'permit a neutral and detached magistrate to determine that seizable evidence probably would be found at the place to be searched.'" *State v. Soto-Sarabia*, 333 Or App 46, 50, ___ P3d ___ (2024) (citing *State v. Castilleja*, 345 Or 255, 269, 193 P3d 1283, *adh'd to on recons,* 345 Or 473, 198 P3d 937 (2008)). The majority relies on an analogy to *State v. Miller*, 254 Or App 514, 295 P3d 158 (2013), to conclude that the nexus between the vehicle and the crime is "patent." *Soto-Sarabia*, 333 Or App at 51. As the majority notes, here, there are fewer controlled buys (two dealer quantity buys within four weeks) supporting the warrant than in *Miller*, which was based on three user quantity buys within two weeks. Additionally, defendant's

drug history was much less significant than the history of the defendant in *Miller*. However, the warrant here and in *Miller* included similar statements by the officers averring to knowledge, based on each officer's training and experience, that items of value including drugs, currency, and sales records are likely to be kept in cars because the trafficker will be able to depart quickly and ensure that necessary tools are available and accessible for the purpose of selling drugs.

I am persuaded by defendant's argument that it is less likely that dealer quantities of heroin would be kept in the car at all times and less likely that paraphernalia would be necessary or likely to be used in the transaction from dealer to dealer and therefore less likely to be in the car when stopped. Although it is possible that dealer to dealer sales records would be kept in a car, it seems a stretch to say that they would more likely be in the car than not. One can imagine that a dealer of controlled substances in large quantities completes relatively fewer transactions than a user-quantity dealer and would be able to remember them until arriving at a better, safer, and more convenient place to keep records. The majority points out that a dealer quantity of heroin still fits inside a running shoe, so reasons that defendant's argument that larger quantities are difficult to hide is undercut. However, that does not make it less *risky* to carry valuable amounts of drugs in a car all the time because automobiles are more susceptible than fixed locations to be subject to unrelated law enforcement scrutiny and the criminal activities of others.

Ultimately, I disagree with the majority because the differences between this case and *Miller* are more important than the similarities. Although defendant drove his car to two drug transactions a month apart, in my view, the totality of the circumstances that the officer knew at the time he sought the warrant did not make it more likely than not that he would find evidence of the crime of delivery of a controlled substance in the car at any time during the ten days after the warrant was issued, especially given that the time between the two buys was three weeks and four days apart. Holding otherwise weakens the probable cause

doctrine that is fundamental to the constitutional rights of all Oregon motorists.

Between the filing of the opening and answering briefs in this case, the Oregon Supreme Court decided *State v. Lee*, 371 Or 200, 532 P3d 894 (2023). It held that ORS 133.545(6), which authorizes magistrates to issue warrants upon a showing that objects of the search are in the places to be searched, does not allow for the issuance of "anticipatory warrants" which contain averments that the objects of the search are not at the time of issuance in the place to be searched but will be in the future. Anticipatory warrants have been used in the past to combat the staleness that occurs rapidly in cases involving narcotics, because they are not executed until a triggering event, like an additional delivery or controlled buy, occurs. The answer to the *Lee* decision cannot be to dilute the meaning of probable cause, as I am concerned the majority disposition here does. The solution is to address ORS 133.545(6) with the body that created it and has the power to amend it.

Therefore, I respectfully dissent.