No. 17 April 24, 2025 555

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

AARON CHRISTOPHER LEE,
*Petitioner on Review.*

(CC 18CR62116) (CA A171927) (SC S069654)

On respondent on review's petition for reconsideration filed July 18, 2023; considered and under advisement on October 10, 2023.*

Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Peenesh Shah, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong and James, Justices, and Walters, Senior Judge, Justice pro tempore.**

JAMES, J.

The petition for reconsideration is allowed. The former opinion is modified and adhered to as modified.

Garrett, J., dissented and filed an opinion, in which Duncan and Bushong, JJ., joined.

_____

* 371 Or 200, 532 P3d 894 (2023); on review from the Court of Appeals, 319 Or App 191, 509 P3d 689 (2022).

** Masih, J., did not participate in the consideration or decision of this case.

**JAMES, J.**

The state has petitioned for reconsideration of our decision in *State v. Lee*, 371 Or 200, 532 P3d 894 (2023). We allow the petition for reconsideration, modify our earlier opinion as described below, and, as modified, adhere to that opinion.

## I. OVERVIEW

In *Lee*, this court considered a challenge to the lawfulness of an "anticipatory" warrant, which we defined to be a warrant "based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *Id*. at 202 (citing *United States v. Grubbs*, 547 US 90, 126 S Ct 1494, 164 L Ed 2d 195 (2006) (internal quotation marks omitted)). We declined to reach the constitutional question that the parties presented because we concluded that Oregon's statutory warrant requirements prohibited such warrants. *Id*.

We began by examining ORS 133.555(2), which requires that a judge issue a warrant only when "the basis of the record made before the judge" establishes that "there is probable cause to believe that the search will discover things specified in the application" and the warrant application satisfies the requirement in ORS 133.545(6) that the affidavit "particularly set[] forth the facts and circumstances tending to show that the objects of the search *are in* the places, or in the possession of the individuals, to be searched." (Emphasis added.) We subjected those statutes to our usual statutory analysis, applying text, context, and legislative history pursuant to *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), and concluded that the statutory requirement that the affidavit establish that the evidence presently be in the location—rather than in that location at some point in the future—foreclosed anticipatory warrants. *Lee*, 371 Or at 218.

Having reached that conclusion, however, we noted that "not all statutory violations may result in the exclusion of evidence." *Id*. We noted that ORS 136.432 provides that, generally, a court may not exclude "relevant and otherwise admissible evidence in a criminal action on the grounds

that it was obtained in violation of any statutory provision." We then adopted the reasoning expressed by former Justice Landau in *State v. Thompson-Seed*, 162 Or App 483, 986 P2d 732 (1999):

> "In *State v. Thompson-Seed*, * * * former Justice (then Judge) Landau explored, in considerable depth, the history of ORS 136.432 and concluded that that statute 'is construed only to constrain the courts from creating new rules of exclusion and not to repeal existing statutory rules of exclusion.' *Id*. at 491. That reasoning is sound. ORS 136.432 itself provides that evidence must be 'otherwise admissible,' clearly implying the potential for statutory exclusion. ORS 136.432 does not prevent the legislature itself from providing for evidentiary exclusion based on a statutory violation. Rather, the legislature is free to provide avenues for exclusion, either explicitly or implicitly, for some statutes, and not for others."

*Lee*, 371 Or at 218-19.

Applying that reasoning, we observed that ORS 133.673 "provides that the statutory requirements for warrants contained in ORS 133.545(6) are enforceable via a motion to suppress." *Id*. at 219. Finally, we observed that suppression, via ORS 133.673, for a failure to adhere to the warrant requirements of ORS 133.545(6) was not new, but in adherence with our holding in *State v. Russell*, 293 Or 469, 474, 650 P2d 79 (1982), in which we said that "[m]otions to suppress evidence are provided for by statute. Statutory grounds for a suppression include noncompliance with ORS 133.545 and 133.555." *Lee*, 371 Or at 219.

The state petitioned for reconsideration, contending that it had not had the opportunity to address the potential applicability of ORS 136.432, and we allowed the parties to file briefing on that issue. Before discussing the state's arguments for reconsideration, it is important to note the aspects of our decision with which the state does not quarrel. First, the state does not dispute our construction of ORS 133.545(6) as requiring evidence to *be in*—in the present tense—the location to be searched. Nor does the state dispute that, so understood, ORS 133.545(6) precludes anticipatory warrants. Third, the state does not challenge our adoption of the reasoning of *Thompson-Seed*. Accordingly, the state does

not dispute that, although ORS 136.432 expresses a general intent that a statutory violation will not be the sole basis for suppressing evidence, it does not prevent the legislature from providing for suppression for a statutory violation in specified instances.

Having clarified what is *not* at issue on reconsideration, we turn to what is. First, the state argues that it was improper for this court to resolve *Lee* on statutory grounds rather than the constitutional grounds asserted by the parties. Our original opinion explained our rationale for considering the statutory question, and we will not revisit that decision here. We reject that aspect of the state's argument without further discussion.

Second, the state contends that our opinion was wrong on the merits because (1) ORS 133.673 does not provide for suppression of evidence obtained in violation of statute; and (2) even if it did, ORS 136.432 forbids suppression under ORS 133.673. In support of those arguments, the state asserts that our opinion unsettled governing law and silently overruled precedent from this court. As we will explain, the state misunderstands our opinion. We take this opportunity to clarify it, and we adhere to our holding that ORS 133.673 permits the exclusion of evidence obtained by an anticipatory warrant obtained in violation of ORS 133.545(6).

## II.   SUMMARY OF HOLDING

The state's petition for reconsideration shows that our original opinion could have been clearer. Therefore, before we turn to our lengthier analysis, we think it may be helpful to concisely set out our intended holding: The text, context, and legislative history of ORS 133.673 demonstrate that the legislature intended that statute to create a procedural mechanism to suppress evidence obtained in violation of a specific and narrow subset of statutes—ORS 133.525 to 133.703, the warrant statutes. Although ORS 136.432 generally prohibits suppression for a statutory violation, this court has adopted the reasoning of *Thompson-Seed*, holding that suppression is permitted in instances in which the legislature intentionally so provides. ORS 133.673, as a procedural suppression mechanism for ORS 133.505 to ORS

133.702, is such an instance where the possibility of suppression has been provided for, depending on the nature of the specific warrant requirement provided in the range.

Not every violation of ORS 133.525 to 133.703 warrants suppression. To determine whether statutory suppression is appropriate pursuant to a procedural suppression statute such as ORS 133.673 that points to a series of substantive statutes, a court looks to the character of the violated substantive statutory provision. *See State v. Ingram*, 313 Or 139, 146, 831 P2d 674 (1992) (explaining that a court looks "'to the character of the rule violated in the course of securing the evidence when deciding whether the rule implie[s] a right not to be prosecuted upon evidence so secured'" when evaluating whether suppression under ORS 133.673 is appropriate (quoting *State v. Davis*, 295 Or 227, 235, 666 P2d 802 (1983) (brackets in *Ingram*))). The rule prohibiting the use of anticipatory warrants is a rule that limits what the state can permissibly seize and search. We need not, and do not, decide whether Article I, section 9, of the Oregon Constitution prohibits anticipatory warrants, but the statutory prohibition contained in ORS 133.545(6) to some extent echoes constitutionally provided privacy protections. Further, the privacy protections that ORS 133.545(6) expresses imply a right not to be prosecuted with evidence obtained in violation of that rule. Collectively, those considerations persuade us that the legislature intended that ORS 133.545(6) and ORS 133.673 would operate together to permit suppression in a case like this.

Our original opinion was limited in scope. Although we read our opinion as being clear on that point, to the extent there was any ambiguity, we modify it to be explicit: We decide only whether anticipatory warrants violate ORS 133.545(6), and, accordingly, whether statutory suppression is available to remedy a violation of that statutory subsection. Our opinion holds—and we confirm on reconsideration—that ORS 133.545(6) requires that an affidavit in support of a warrant set forth that evidence presently *be in* the location to be searched, and that suppression is provided by statute because the character of the requirement contained in ORS 133.545(6) is a privacy protection that implies

a right not to be prosecuted upon evidence secured via a warrant obtained in violation of that protection. *Ingram*, 313 Or at 146 (explaining that we look "'to the character of the rule violated in the course of securing the evidence when deciding whether the rule implie[s] a right not to be prosecuted upon evidence so secured'" (quoting *Davis*, 295 Or at 235 (brackets in *Ingram*))). We are not called upon to decide, and do not decide, whether suppression is permitted for violation of any other aspect of the warrant requirements set forth in ORS 133.525 to 133.703. We do not consider, and do not hold, whether that suppression would lie, via the mechanism of ORS 133.673, for *every* violation of *any* aspect of ORS 133.525 to 133.703.

Having clarified our holding, we now explain our reasoning in more detail.

## III.   ANALYSIS

The state asserts that our original opinion "reopen[ed] a question that had long appeared settled" and disrupted decades of case law. Specifically, the state argues that *Lee* "cannot be squared with prior decisions that foreclose viewing ORS 133.673 as creating a rule of suppression of any kind." In the state's view, our precedent so clearly foreclosed suppression under ORS 133.673 that our decision to the contrary in *Lee* violated principles of *stare decisis*.

We disagree. Critically, our previous cases have never thoroughly addressed the statutes at issue here: ORS 133.673 and its interoperation with ORS 133.525 to 133.703. We acknowledge that, in *State v. Henderson*, 341 Or 219, 142 P3d 58 (2006), we said in a footnote that "unless the violation has constitutional dimensions, a statutory violation ordinarily cannot serve as a basis for suppression." *Id*. at 223. However, *Henderson* did not engage with the applicable statutes, nor did it undertake a statutory analysis. Additionally, in *Henderson*, the defendant raised two challenges, a constitutional challenge that the warrant was based on insufficient probable cause, and a statutory challenge to the method of execution of the warrant—namely, that executing officers failed to read the contents of the warrant to the suspect at the time of the search. *See State v. Henderson*, 200

Or App 225, 227, 113 P3d 944, 945 (2005), *rev'd*, 341 Or 219 (2006) (summarizing the defendant's challenges on appeal). We reversed on the constitutional challenge to the issuance of the warrant itself, which was properly considered before any subsequent question going to the method of warrant execution. Accordingly, any comments on the applicability of ORS 136.432 to ORS 133.673 were *dicta*.

In *State v. Rodgers*, 347 Or 610, 227 P3d 695 (2010), we considered whether suppression was an available remedy for a violation of ORS 810.410, which sets out various requirements for police officers investigating traffic violations. For that specific statute, we said:

> "Before 1997, this court, in a series of cases, held that the statute not only described what an officer could do respecting a traffic stop; it also indicated what the officer could not do. \*\*\* This court held that, because the statute was intended to limit police activity associated with a traffic stop, it was also the legislature's intention that evidence seized in violation of the statutory proscription be suppressed.

> "The foregoing interpretations of legislative intent were superseded by the legislature in 1997. In that year's legislative session, the legislature enacted ORS 136.432. \*\*\*

> "ORS 136.432 prohibits the judicial branch from excluding evidence obtained by government conduct that exceeds statutory authority. Thus, although the legislature has continued to circumscribe the authority of the police in ORS 810.410—requiring that, during a traffic stop, police investigatory conduct be reasonably related to the traffic violation, the identification (of persons), and the issuance of a citation—any evidence that is obtained when the police exceed that authority is not suppressible unless it violates some constitutional rule."

*Id.* at 619-21.

*Rodgers* dealt, exclusively, with the legislative intent of ORS 810.410. *Rodgers* did not have occasion to consider the warrant statutes at issue here. Broader statements, which might be read to imply a prohibition on statutory suppression, for statutes not before the court in *Rodgers*, were *dicta*.

Following *Rodgers*, we acknowledge that this court has said in passing that statutory suppression was often unavailable, but again, for different statutes. *See, e.g.*, *State v. Watson*, 353 Or 768, 778, 305 P3d 94 (2013) (considering traffic stop statutes and stating that "ORS 136.432, which provides that courts may not exclude evidence obtained in violation of any statutory provision unless exclusion is required by the federal or state constitutions or certain rules of evidence"); *State v. Maciel-Figueroa*, 361 Or 163, 172-73, 389 P3d 1121 (2017) (stating, in reference to a statute concerning investigatory stops under ORS 131.615, that, "in 1997, the legislature enacted ORS 136.432, which limited the ability of courts to exclude evidence as a remedy for violations of statutes such as ORS 131.615"); *State v. Arreola-Botello*, 365 Or 695, 700-01, 451 P3d 939 (2019) (stating, in reference to the traffic stop statute, ORS 810.410(3)(e): "[n]otwithstanding that statute, however, any evidence obtained when an officer exceeds that authority cannot be suppressed unless the exclusion of the evidence is required by the state or federal constitutions. * * * Since ORS 136.432 was enacted, defendants seeking to exclude evidence have, as defendant does here, asserted constitutional arguments in support of their motions to suppress.").

Those cases, like *Rodgers*, dealt with specific statutes not at issue here. None of our cases since the enactment of ORS 133.432 have considered the interaction of ORS 133.673 with the statutory subset of ORS 133.525 to 133.703. Admittedly, some confusion in this area is understandable, particularly given the language we used in *Watson*, that "ORS 136.432 * * * provides that courts may not exclude evidence obtained in violation of any statutory provision unless exclusion is required by the federal or state constitutions or certain rules of evidence." 353 Or at 778. But, to the extent that sentence could be read as somehow foreclosing the *legislature's* ability to provide for suppression as a remedy for a statutory violation *at all*, in any form, neither of the parties advocate that position, nor do we understand the dissent to hold that view.[1]

---

[1]   The majority and dissent agree on more than they disagree. Both the majority and dissent agree that ORS 136.432 does not absolutely prohibit the legislature from providing for suppression for a particular statutory violation.

The legislature has the authority to grant privacy protections to Oregonians that exceed the minimum privacy protections guaranteed by the Oregon and federal constitutions. Further, the legislature has the power to authorize suppression of evidence obtained in violation of those statutory privacy protections. The question is not whether the legislature can provide for statutory suppression—it can, as the state itself concedes—the question is whether the legislature intended to provide for the possibility of statutory suppression under ORS 133.673(1), for a violation of the narrow range of statutes contained in ORS 133.305 to ORS 133.703.

A.  *The text, context, and legislative history of ORS 133.673 show that the legislature intended to create a statutory suppression mechanism.*

Although—contrary to the state's suggestion—this court has concluded on several occasions that suppression is available under ORS 133.673, we have never engaged in a careful analysis of that statute. Accordingly, we turn to the familiar interpretive framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and modified in *Gaines*, 346 Or at 171-72, to determine whether the legislature intended ORS 133.673 to create a statutory mechanism for suppression.

We begin with the text of ORS 133.673 (1973), which provided:

> "(1)  Objections to use in evidence of things seized in violation of any of the provisions of ORS 133.525 to 133.703 shall be made by a motion to suppress which shall be heard and determined by any department of the trial court in advance of trial.
>
> "(2)  A motion to suppress which has been denied may be renewed, in the discretion of the court, on the ground of newly discovered evidence, or as the interests of justice require."

---

And they agree that ORS 136.432 prohibits purely judicially created suppression for a statutory violation, absent legislative intent to provide such a remedy. As we perceive the disagreement, the dissent would require that expression of legislative intent to come within the individual statute, rather than through such things as the interaction of statutes, like ORS 133.673 and its cross-reference to the limited range of ORS 133.525 to 133.703. We do not narrow our search for legislative intent so as to exclude such considerations.

Or Laws 1973, ch 836, § 114.[2] Generally, this court assumes that the legislature intended the words of statutes to have their "plain, ordinary meanings." *State v. Eastep*, 361 Or 746, 751, 399 P3d 979 (2017). When interpreting a statute, we are "not to insert what has been omitted, or to omit what has been inserted." ORS 174.010.

There are two relevant pieces of text in the statute. First, ORS 133.673(1) (1973) applies to "[o]bjections to use in evidence of things seized in violation of any of the provisions of ORS 133.525 to 133.703." "Objection" is a familiar legal term that refers to the "[a]ct of objecting; that which is, or may be, presented in opposition; an adverse reason or argument." *Black's Law Dictionary* 1222 (4th ed 1968). "Use" has many meanings, but in the context of "use of evidence," the legislature most likely intended "use" to mean "to put into action or service : have recourse to or enjoyment of : EMPLOY" *Webster's Third New Int'l Dictionary* 2523 (unabridged ed 2002). Thus, "objection to use in evidence" would mean the act of opposing the employment—or put in evidentiary terms, the admission at trial—of evidence obtained in violation of ORS 133.525 to 133.703.

Second, ORS 133.673(1) (1973) explains that such an objection "shall be made by a motion to suppress which *shall* be heard and *determined* by any department of the trial court." (Emphases added.) Ordinarily, "'shall' create[s] a mandatory duty," which is often contrasted with "may," which "creates only authority to act." *Friends of the Columbia Gorge v. Columbia River (S055915)*, 346 Or 415, 426-27, 212 P3d 1243 (2009) (quoting *Cain v. Rijken*, 300 Or 706, 718, 717 P2d 140 (1986)). Accordingly, ORS 133.673(1) (1973) gave courts not just the authority but a mandatory duty to hear and determine legally permitted motions to suppress.[3] To determine is "to settle a question or controversy about :

___

[2] The text of ORS 133.673 has remained virtually unchanged since its enactment in 1973. The legislature has amended the text only once, deleting the reference to "any department of" the trial court. Or Laws 1975, ch 197, § 1.

[3] That conclusion is bolstered by the text of ORS 133.673(2). Whereas the legislature used "shall" to describe a trial court's duty to resolve a motion to suppress in ORS 133.673(1), it used "may" when referring to a trial court's authority to hear a renewed motion to suppress in ORS 133.673(2), which suggests deliberate legislative word choices. *Nearing v. Weaver*, 295 Or 702, 709, 670 P2d 137 (1983).

decide by judicial sentence." *Webster's* at 616. Thus, in enacting ORS 133.673(1) (1973), the legislature not only authorized but required courts to determine appropriate motions to suppress. In other words, the legislature created a statutory suppression mechanism that required courts to determine whether a given statutory violation should result in suppression.

Context supports that plain reading of the statute. Context includes "other provisions of the same statute and other related statutes." *PGE*, 317 Or at 611. It can include previously enacted versions of the same statute, or other related statutes, showing how an area of legislation "developed over the years." *Lindell v. Kalugin*, 353 Or 338, 350, 297 P3d 1266 (2013).

When ORS 133.673 was enacted in 1973, it was enacted alongside three other suppression statutes. One of those statutes, *former* ORS 133.683 (1973), *repealed by* Or Laws 1997, ch 313 § 37, addressed how statutory suppression would apply to derivative evidence rather than direct products of illegal police conduct:

> "If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

Or Laws 1973, ch 836, § 117. Another, ORS 133.693(1) (1973), allowed a defendant to contest "in any proceeding on a motion to suppress * * *, the good faith, accuracy and truthfulness of the affiant with respect to the evidence presented to establish probable cause for search or seizure." Or Laws 1973, ch 836, § 118. That type of suppression motion is commonly referred to as a motion to controvert. *State v. Harp*, 299 Or 1, 6-9, 697 P2d 548 (1985) (discussing motions to controvert under ORS 133.693). And the final exclusion statute,

ORS 133.703 (1973), established procedures for motions to controvert based on good faith. Or Laws 1973, ch 836, § 119.

That context is useful for a couple of reasons. First, ORS 133.673 (1973), *former* ORS 133.683 (1973), and ORS 133.693 (1973) each created a unique statutory suppression mechanism. ORS 133.673 (1973) authorized a motion to suppress for evidence obtained in violation of the statutory warrant requirements, *former* ORS 133.683 (1973) authorized a motion to suppress for derivative evidence, and ORS 133.693 (1973) authorized a motion to suppress to directly attack the truth of an affidavit. Second, each of those statutory suppression mechanisms gives courts significant authority to determine whether suppression is an appropriate remedy.

The legislative history further reinforces our conclusion that the legislature intended ORS 133.673 (1973) to permit exclusion of evidence. *See State v. Carpenter*, 365 Or 488, 497 n 4, 466 P3d 1273 (2019) (explaining that, "when evaluating statutes developed by the Criminal Law Revision Commission, * * * the commentary and the discussions that preceded the adoption of the final draft" are sources of legislative history for statutes in the original Oregon criminal procedure code). The commission organized the draft code into 18 articles, each dealing with a broad aspect of criminal procedure. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report, Table of Contents at III-XXX (Nov 1972). Article V, dealing with search and seizure, was further subdivided into various topics, one of which was "Evidentiary Exclusion." Commentary Table of Contents at IX-XI. That subsection included section 164—the progenitor of ORS 133.673. Commentary § 164 at 103. Thus, the structure of Article V indicates an intent to group all the exclusionary provisions together with those provisions controlling when exclusion was available for violations of "sections 131 to 169." Commentary § 164 at 103.

Importantly, section 164 did not stand alone. In addition to the provisions that were ultimately enacted by the legislature, the commission proposed a statutory provision that would have changed the scope of section 164. Where section 164 authorized motions to suppress for

violations of the statutory warrant provisions, section 166 limited the exclusionary rule's application. Section 166 provided, "A motion to suppress evidence based upon a violation of any of the provisions of sections 131 to 169 of this Act shall be granted only if the court finds that the violation was substantial." Commentary § 166 at 105. The commission intended section 166 "to ameliorate the all-or-nothing effect of the exclusionary rule" and replace it with a seven-factor test to determine whether the violation was "substantial" enough to warrant exclusion. Commentary § 166 at 106 (listing factors). Accordingly, the commission envisioned a framework where a defendant would move for exclusion of evidence obtained in violation of Article V, but exclusion would only be granted when the violation was "substantial."

The legislature rejected the commission's attempt to limit the availability of suppression as a remedy. In a unanimous vote, the Senate Judiciary Committee deleted section 166 from Senate Bill (SB) 80 (1973)—the bill that enacted the draft code. Minutes, Senate Judiciary Committee, SB 80, Mar 14, 1973, 1. The legislature thus eliminated the limitations of Section 166 on provisions like ORS 133.673 (1973). That is, ORS 133.673 (1973) allowed a party to request suppression of evidence obtained in violation of ORS 133.525 to 133.703 without consideration of whether the violation was "substantial."

In addition to those final proposed statutory provisions, the elimination of another proposed provision provides additional insight into the purpose of the statutory suppression mechanism in ORS 133.673 (1973). As we noted in *State v. Brock*, 294 Or 15, 653 P2d 543 (1982), "[a] proposed section that specifically would have included unwarranted nighttime searches among the reasons for suppressing evidence was considered but not adopted by the Criminal Law Revision Commission." *Id.* at 21. In *Brock*, however, we did not consider the commission's rationale for not adopting that proposal. That proposed section listed all of the statutory requirements set out in the proposed search and seizure provisions and explained that a motion to suppress could be based on any of those requirements. Criminal Law Revision Commission, Article V, Preliminary Draft No. 2, Nov 1969, 79-81. The

subcommittee responsible for the search and seizure provisions later voted to delete that proposed section because it believed that the proposed provision was unnecessary language that may lead to a problem if the criminal procedure code was amended to impose a new warrant requirement and that new basis for a motion to suppress was not included in that provision. Tape Recording, Criminal Law Revision Commission, Subcommittee No. 2, Mar 22, 1972, Tape 28, Side A (statement of Professor George Platt); Minutes, Criminal Law Revision Commission, Subcommittee No 2, Mar 22, 1972, 17 (approving motion to delete the proposed provision and instead include reference to the relevant statutory provisions in the other proposed suppression mechanisms).

For those reasons, we conclude that, in enacting ORS 133.673, the legislature intended to create a procedural mechanism for motions to suppress evidence obtained in violation of ORS 133.525 to 133.703.

B.  *ORS 136.432 did not override ORS 133.673.*

Based on our conclusion that ORS 133.673 is a legislatively created suppression mechanism, we also conclude that ORS 136.432 did not    impliedly eliminate that mechanism. In our original opinion, we explained that our interpretation of ORS 136.432 was based on former Justice (then Judge) Landau's analysis in *Thompson-Seed*, 162 Or App at 483. In *Thompson-Seed*, then Judge Landau observed that, it is "unlikely that the legislature intended to repeal all of those statutes without explicitly saying so." *Id*. at 488. Considering that generally, repeal by implication is disfavored, the court ultimately concluded that "the legislature is free to provide avenues for exclusion, either explicitly or implicitly, for some statutes, and not for others." *Lee*, 371 Or at 218; *see also State ex rel Huddleston v. Sawyer*, 324 Or 597, 604-05, 932 P2d 1145, *cert den*, 522 US 994 (1997) (explaining that repeal by implication is disfavored); *State ex rel. Med. Pear Co. v. Fowler*, 207 Or 182, 195, 295 P2d 167 (1956) ("It is well settled that amendments or repeals by implication are not favored by the courts[.]").

Our conclusion that the legislature did not intend to impliedly repeal ORS 133.673 in enacting ORS 136.432

is bolstered by additional support. When the legislature enacted ORS 136.432, it explicitly repealed *former* ORS 133.683 (1973)—the statutory suppression mechanism for challenges to derivative evidence. Or Laws 1997, ch 313, § 37. The legislature did not expressly repeal or otherwise modify either suppression under ORS 133.673 or controversion under ORS 133.693. The legislature's decision to expressly repeal *former* ORS 133.683 (1973) demonstrates that the legislature clearly knew how to repeal a suppression statute and did not do so with ORS 133.673.

Further, when it enacted ORS 136.432, we presume that the legislature was aware of *Ingram,* where this court had interpreted ORS 133.565(2)(b), in conjunction with ORS 133.673, as evidencing the legislature's intent to permit suppression. *See, e.g.*, *Moro v. State*, 354 Or 657, 665-66, 320 P3d 539, 543 (2014) ("In interpreting statutes, this court presumes that the legislature is aware of existing law and this court's interpretation of that law."); *State v. Stark*, 354 Or 1, 10, 307 P3d 418 (2013) (explaining that this court presumes that the Oregon legislature is aware of existing law on a subject); *State v. Clevenger*, 297 Or 234, 244, 683 P2d 1360 (1984) (noting that the Oregon legislature is presumed to be aware of prior decisions of the Oregon Supreme Court). As we have said in adopting *Thompson-Seed*, when the legislature enacted ORS 136.432, it intended to bar suppression only in cases in which the legislature, itself, did not intend to permit suppression. Given that the legislature was aware of our holding in *Ingram* when it enacted ORS 136.432, its decision to leave those two statutes unaltered while modifying other statutes, indicates to us that the legislature did not intend to foreclose ORS 133.673 from continuing to operate as a procedural suppression mechanism for potential violations of a narrow statutory range, ORS 133.525 to 133.703.

C.  *Not every violation of ORS 133.525 to 133.703 warrants suppression.*

Our conclusion that ORS 133.673 provides a procedural mechanism for considering motions to suppress for violations of ORS 133.525 to 133.703 does not, mean, however, that suppression is permitted for all statutory

violations, or even for violations of every provision of that statutory subset. In its briefing, the state argues that "[t]his court has on at least three occasions announced holdings that necessarily and logically rest on a conclusion that ORS 133.673(1) does not by itself create a rule of suppression of any kind." *See Brock*, 294 Or at 15; *Ingram*, 313 Or at 139; *Henderson*, 341 Or at 219. To the extent the state is arguing that ORS 133.673(1) on its own does not mandate suppression, we agree.

In *Ingram*, we considered a challenge to a search warrant's particularity brought under both Article I, section 9, of the Oregon Constitution and ORS 133.656(2)(b). We resolved the case on the subconstitutional, statutory, basis. In doing so, we were careful to note that suppression under ORS 133.673 may be available for "*some* statutory violations." *Id*. at 146 (emphasis added).

We acknowledge that our original opinion could have been more thorough by citing *Ingram* because *Ingram* refines the statement in *Russell* that "statutory grounds for suppression under ORS 133.673 included noncompliance with ORS 133.545 and 133.555." *Russell*, 293 Or at 474. In *Ingram* we noted that not all statutory violations are subject to suppression and explained that, in determining "which statutory violations will result in suppression," we would look to *Davis*, 295 Or at 231, and "'the character of the rule violated in the course of securing the evidence when deciding whether the rule implie[s] a right not to be prosecuted upon evidence so secured,'" *Ingram*, 313 Or at 146 (quoting *Davis*, 295 Or at 235 (brackets in *Ingram*)). "[W]hen the object of the statute is to define the authority of officers to seize or to search a person or property, *** the court *** has given effect to the statute by denying the state the use of evidence that it would not have secured if its officer had respected the rights that the statute was designed to protect." *Davis*, 295 Or at 236.[4]

The state argues that *Ingram* "used an implied, purely judicial rule of suppression" as the basis for

---

[4] *Ingram* then briefly noted our decision in *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991), wherein we held that evidence obtained in violation of ORS 810.410(3) must be suppressed, because the object of that statute is to define the authority of officers to search in response to a traffic infraction. *Ingram*, 313 Or at 147.

suppression. In essence, the state argues that the suppression in *Ingram* was a constitutional, as opposed to statutory, remedy. That is incorrect. Our holding did not limit suppression to only those privacy rights that are constitutionally protected. Rather, *Ingram* held that whether suppression is permitted is determined by looking "'to the character of the rule violated in the course of securing the evidence when deciding whether the rule implie[s] a right not to be prosecuted upon evidence so secured.'" 313 Or at 146 (quoting *Davis*, 295 Or at 235 (brackets in *Ingram*)). That does not mean the rule that is violated must perfectly mirror a constitutional right. The legislature is free to expand Oregonians' privacy protections beyond the constitutional minimum, and, when it does, suppression may be appropriate. For purposes of ORS 133.673, the character of the specific provision within ORS 133.525 to ORS 133.703 that is violated must define the authority of officers to seize or to search a person or property and imply a right not to be prosecuted upon evidence secured in violation of the rule.

The state misreads the scope of our caselaw and misreads the scope of our decision in this case. We have never held, and do not hold here, that ORS 133.673 requires suppression for *any and all* violations of statute. ORS 133.673 only points to a very specific statutory subset. Further, we have not even held that ORS 133.673 requires suppression for violations of every provision within that subset. Rather, we have consistently held that suppression is available depending on the character of the statutory right violated.

Here, we consider only ORS 135.545(6). That rule provides that warrants shall be "supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched." That requirement goes to the very heart of Oregonians' privacy rights against governmental searches. It ensures that searches for objects will be limited—limited to the places where objects are located, or to the persons who possess those objects. That provision defines the authority of officers to seize or to search a person or property. We need not, and do not, decide whether Article I, section 9,

of the Oregon Constitution prohibits anticipatory warrants, but the prohibition contained in ORS 133.545(6), at least in spirit, reflects constitutional privacy protections. It is of a type that implies a right not to be prosecuted upon evidence secured in violation of that rule. Accordingly, and in keeping with our decisions in *Russell*, *Davis*, *Ingram*, and other cases,[5] the evidence obtained in this case in violation of ORS 135.545(6), required statutory suppression under ORS 133.673.

## IV.   CONCLUSION

From the text, context, and legislative history, we conclude that the legislature intended ORS 133.673 to create a procedural suppression mechanism for a narrow range of statutes—ORS 133.525 to 133.703. ORS 133.673 allows criminal defendants to object to evidence on the grounds that it was obtained in violation of any of the provisions of ORS 133.525 to 133.703 and requires courts to decide those objections. Thus, when a court decides to suppress evidence under that provision, it is not—as the state argues—relying on an implied judicial suppression remedy. Instead, a court is fulfilling a duty imposed by the legislature to determine whether the violation of a statutory warrant provision requires suppression. When considering a procedural statute that ties to another statutory series—such as here where ORS 133.673 references ORS 133.525 to 133.703—a court looks to the character of the violated provision within the referenced substantive statutes: in this case, ORS 133.525 to 133.703. *See Ingram*, 313 Or at 146 (explaining that a court looks "to the character of the rule violated in the course of securing the evidence when deciding whether the rule implie[s] a right not to be prosecuted upon evidence so secured" when evaluating whether suppression under ORS 133.673 is appropriate (quoting *Davis*, 295 Or at 235 (brackets in *Ingram*))).

---

[5] *See State v. Reid*, 319 Or 65, 71, 872 P2d 416 (1994) (explaining that the warrant was defective under ORS 133.565(2)(b) because the text of the warrant authorized a search that was broader than the probable cause supplied by the supporting affidavit and concluding that evidence discovered pursuant to the flawed warrant must be suppressed under *Ingram*); *State v. Carter*, 316 Or 6, 14, 848 P2d 599 (1993) (concluding that suppression under ORS 133.673 was required for violations of ORS 133.545(6) and 133.555(2)).

Our original opinion in this case correctly announced a limited holding: ORS 135.545(6) provides that warrants shall be "supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched." That rule defines the authority of officers to seize or to search a person or property and implies a right not to be prosecuted upon evidence secured in violation. Accordingly, and in keeping with our decisions in *Davis*, *Ingram*, and other cases, the evidence obtained in this case in violation of ORS 135.545(6), required statutory suppression under ORS 133.673.

The petition for reconsideration is allowed. The former opinion is modified and adhered to as modified.

**GARRETT, J.,** dissenting.

*State v. Lee*, 371 Or 200, 532 P3d 894 (2023), held that the warrant in this case violated ORS 133.545(6). Although ORS 133.545 does not say that violation of its requirements may lead to suppression of evidence, this court held that a different statute, ORS 133.673, "provided a statutory remedy of evidentiary exclusion." *Id.* at 219. As a result, this court resolved the case on statutory grounds instead of the constitutional grounds that the parties had raised. The state's petition for reconsideration contends that the result in *Lee* is inconsistent with ORS 136.432, which says that courts may not suppress evidence based solely on violations of statutory requirements. The state further contends that ORS 133.673 does not alter that conclusion. Having now considered the statutory arguments that were not presented to us in the parties' initial set of briefs, I am persuaded that the state is correct on both counts. Accordingly, I respectfully dissent from the majority's opinion on reconsideration, which adheres to our original decision as modified; instead, I would have withdrawn that decision and proceeded to reach the constitutional question.

The interpretive questions at issue turn on the meanings of two statutes: ORS 133.673, enacted in 1973, and ORS 136.432, enacted in 1997. To properly frame that inquiry, some historical context is necessary.

Before the enactment of ORS 136.432 in 1997, this court had, "over time, developed a body of case law specifically concerned with whether suppression is appropriate if the government violates a statute in the criminal code." *State v. Trenary*, 316 Or 172, 176, 850 P2d 356 (1993). Historically, violation of a statute did not always require exclusion of evidence. *Id.*; *see also State v. Valdez*, 277 Or 621, 629, 561 P2d 1006 (1977) ("We do not always [in]voke the sanction of evidentiary exclusion for the violation of a statute."). "In the absence of a constitutional violation or an express statutory requirement of exclusion," this court would nonetheless exclude evidence obtained in violation of a statute "if the law violated was 'designed to protect citizens against unauthorized or illegal [conduct by the government],' *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983), or, otherwise stated, if suppression would effectuate the purpose of the statute." *Trenary*, 316 Or at 176 (citing *State v. Porter*, 312 Or 112, 121, 817 P2d 1306 (1991); *State v. Brock*, 294 Or 15, 22, 653 P2d 543 (1982)). In *Davis*, we explained the rationale behind that practice:

> "[W]hen the object of the statute is to define the authority of officers to seize or to search a person or property, * * * the court has drawn the logical consequence and has given effect to the statute by denying the state the use of evidence that it would not have secured if its officer had respected the rights that the statute was designed to protect."

295 Or at 236.

That brings us to the enactment of ORS 136.432, which states that "[a] court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision" unless exclusion of the evidence is required by the federal or state constitution or the rules of evidence. As the Court of Appeals explained in *State v. Thompson-Seed*, 162 Or App 483, 487, 986 P2d 732 (1999), "[t]he statute clearly provides that relevant, 'otherwise admissible' evidence may not be excluded merely because it was obtained in violation of another statute."

The question in *Thompson-Seed* concerned the meaning of "otherwise admissible evidence" in ORS 136.432. *Id.* The

state in that case conceded that it had violated the personal service requirements for subpoenas set out in ORS 192.565. *Id.* It also conceded that, ordinarily, that statutory violation would require exclusion of the evidence under ORS 192.590(5), which provided that "[e]vidence obtained in violation of ORS 192.550 to 192.595 is inadmissible in any proceeding." *Id.*[1] The state contended, however, that ORS 136.432's prohibition on the exclusion of evidence for statutory violations had the effect of superseding ORS 192.590(5). *Id.* In response, the defendant argued that ORS 136.432 "was not intended to abrogate existing, legislatively enacted statutory provisions defining the extent to which evidence must be excluded," but, rather, "was intended only to prohibit *judicially created* exclusion of evidence based on the violation of a statute." *Id.* (emphasis added). The Court of Appeals agreed with the defendant.

The court noted the principle from this court's case law, discussed above, that evidence obtained in violation of a statute is not necessarily excluded. *Id.* at 488 (citing *Trenary*, 316 Or at 176). Rather, if suppression is to occur, it is because "the legislature itself explicitly may require that evidence illegally obtained must be excluded," or, in the absence of an express statutory requirement of exclusion, the "courts may require the evidence to be excluded to effectuate what they believe to be the purpose of the statute." *Id.*

> "In *State v. Dominguez-Martinez*, 321 Or 206, 214, 895 P2d 306 (1995), for example, the Supreme Court held that evidence obtained in violation of ORS 810.410—limiting the authority of police officers to investigate during the course of a traffic stop—is inadmissible. ORS 810.410 itself does not require exclusion. The court nevertheless required exclusion because it deemed exclusion necessary to effectuate the purpose of the statute."

*Id.*

The Court of Appeals determined that those "court-created rules of exclusion" were the focus of ORS 136.432. *Id.* Any broader reading of ORS 136.432, the court reasoned, would be irreconcilable with numerous statutes

---

[1] ORS 192.565 and ORS 192.590 were renumbered in 2011. The dissent refers to the versions of those statutes enacted at the time that *Thompson-Seed* was decided.

that the legislature had enacted "prescrib[ing] the conditions of admissibility of certain evidence in criminal proceedings." *Id.* at 488-89.

> "ORS 41.910, for example, provides that evidence obtained in violation of the wiretap statute shall not be admissible. The state's broad reading of ORS 136.432 suggests that, as long as the evidence obtained in violation of the wiretap statute is relevant and otherwise admissible, it may not be excluded, even though ORS 41.910 expressly states that such evidence is inadmissible."

*Id.* at 488. The court found it "highly improbable" that the legislature had intended ORS 136.432 to essentially repeal all those "statutory rules of exclusion" without explicitly saying so. *Id.* at 488-89, 491. Instead, the court construed ORS 136.432 as "simply constrain[ing] the courts from creating rules of exclusion where the legislature itself has not created them, as in *Dominguez-Martinez*." *Id.* at 489.

The majority adopts the reasoning of *Thompson-Seed*, agreeing that, in enacting ORS 136.432, the legislature intended to stop the courts' practice of requiring the exclusion of evidence based on statutory violations for which the legislature itself has not required exclusion. At the same time, the majority breaks the rule it purports to adopt: It announces that exclusion of the evidence for violations of ORS 133.545(6) is required, even though that statute contains no express exclusion requirement. The majority attempts to square that circle by concluding that *ORS 133.673* is a "procedural suppression mechanism" that avoids the *Thompson-Seed* bar. 373 Or at 559. I disagree that ORS 133.673 can properly be understood as a statutory rule of exclusion, in the sense meant by *Thompson-Seed*.

It is not entirely clear what the majority means by a "procedural suppression mechanism." Within the framework articulated by *Thompson-Seed*, which the majority says it is adopting, there exist, on the one hand, statutory rules of exclusion—*i.e.*, statutes that "explicitly * * * require that evidence illegally obtained must be excluded" or otherwise expressly "prescribe the conditions of admissibility of certain evidence in criminal proceedings." 162 Or App at 488, 491. On the other hand, there are judicially-created

rules of exclusion, which, as discussed above, arose in cases where the statute itself did not require exclusion, but the court nevertheless had "required exclusion because it deemed exclusion necessary to effectuate the purpose of the statute." *Id.* at 488.

Under *Thompson-Seed*, ORS 133.673 can be the basis for suppressing evidence only if it fits in the former category. The majority appears to place it there, but it does not fit. To start, ORS 133.673 is materially different from the statutory rules of exclusion discussed in *Thompson-Seed*. The statute at issue in that case, ORS 192.590(5), provided that "[e]vidence obtained in violation of ORS 192.550 to 192.595 is inadmissible." *Id.* at 487. That statute, and several others in which the legislature had expressly required the exclusion of evidence for certain statutory violations, appeared to directly conflict with ORS 136.432, which prohibits courts from excluding "relevant and otherwise admissible evidence" that was obtained "in violation of any statutory provision."

Relying on the "otherwise admissible" wording in ORS 136.432, the court understood that statute to prohibit courts from excluding evidence obtained in violation of a statute *if the evidence was "otherwise admissible." Thompson-Seed*, 162 Or App at 487 (emphasis added); *see id.* ("The statute clearly provides that relevant, 'otherwise admissible' evidence may not be excluded merely because it was obtained in violation of another statute. The question in this case, however, is whether the evidence was 'otherwise admissible.'"). Because ORS 192.590(5) explicitly provided that evidence obtained in violation of ORS 192.565 was inadmissible, the evidence in *Thompson-Seed* was not "otherwise admissible" for purposes of ORS 136.432. Accordingly, the court concluded that exclusion of the evidence was required. *Id.* at 491-92.

The court in *Thompson-Seed* thus created a narrow exception to ORS 136.432's prohibition on the exclusion of evidence for statutory violations. That exception is based on the distinction between statutes where the legislature has expressly required exclusion or otherwise "prescribe[d] the conditions of admissibility" of certain evidence—referred to as "existing statutory rules of evidentiary exclusion"—and

statutes where the legislature has not done so. The court concluded that the former were not superseded by ORS 136.432.

ORS 133.673 bears no resemblance to the statutory rules of exclusion that survived ORS 136.432 under *Thompson-Seed*. Nearly all the statutes cited as examples of rules of exclusion in that case explicitly provided for exclusion. *Thompson-Seed*, 162 Or App at 488-89. In contrast, ORS 133.673 provides that "[o]bjections to use in evidence of things seized in violation of any of the provisions of ORS 133.525 to 133.703 shall be made by a motion to suppress which shall be heard and determined by any department of the trial court in advance of trial." That wording does not *require* that evidence obtained in violation of the warrant statutes be excluded, nor does it provide any criteria for admissibility or suppression. The statute, instead, requires that the motion to suppress be "heard and determined by any department of the trial court in advance of trial." That is, ORS 133.673 governs *how* objections for certain statutory violations are to be raised, and *when* and *by whom* those objections are to be heard. The text thus suggests that the statute was intended to provide a procedural framework for the filing of motions to suppress, not to serve as the basis for suppression itself.

The legislative history of ORS 133.673 confirms that understanding. ORS 133.673 derives from section 164 of the Criminal Law Revision Commission's Proposed Oregon Criminal Procedure Code. The commentary to that proposal explained that section 164 "provides the *procedural* framework for motions to suppress evidence" and "perpetuates the existing law on where motions to suppress are filed." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 164, 104 (Nov 1972) (emphasis added). That commentary reinforces the view that the legislature understood ORS 133.673 as procedural, governing the filing and determination of motions to suppress based on violations of ORS 133.525 to 133.703, and not as the *source* of any exclusion requirement.

Our case law following passage of ORS 133.673 further indicates that this court did not regard ORS 133.673

as creating its own entitlement to suppression of evidence. *See State v. Russell*, 293 Or 469, 650 P2d 79 (1982); *State v. Brock*, 294 Or 15, 653 P2d 543 (1982); *State v. Ingram*, 313 Or 139, 831 P2d 674 (1992). As I will explain, those cases treated ORS 133.673 as a mechanism for adjudicating motions to suppress, and only required suppression in two situations: (1) where the state had violated *another* statute that *expressly provided* for suppression as a remedy; and (2) where the state had violated another statute that did not so provide, but where *this court inferred* that suppression was a necessary remedy to further the purpose of the statute.

In *Russell*, we concluded that the state had failed to comply with the requirements of ORS 133.545(3) and 133.555(1) as to the form and recordation of probable cause allegations made in support of a search warrant. 293 Or at 475-76. Neither of those statutes explicitly required the exclusion of evidence obtained in violation of those statutes, nor did the form and recordation requirements contained in those statutes arise in any "constitutional context." *See id.* at 472-73. Nonetheless, we concluded that suppression of the evidence was warranted based on the purpose of those statutory requirements. *Id.* at 476.

One apparent purpose of the form and recordation requirements, we explained, was "to facilitate subsequent review for the existence of probable cause." *Id.* at 473. That purpose was implicit in ORS 133.545(3) and express in ORS 133.555(1), the latter of which required the judge to make and keep a record of any testimony taken in deciding a warrant application, and further established that that record "shall be admissible as evidence on any motion to suppress." *Id.* at 473-74. Noting that, under ORS 133.673, statutory grounds for a motion to suppress included noncompliance with ORS 133.545 and 133.555, we concluded that the criminal procedure code was "design[ed]" to "enable a defendant to challenge by a motion to suppress *** the sworn information upon which the magistrate acted" in issuing the warrant. *Id.* at 474. "In doing so, *he is entitled to the benefit of the statutory requirement* that the information before the magistrate be presented or recorded in a form which will be available for review at a suppression hearing." *Id.* (emphasis

added). Because the information presented to the magistrate in that case failed to comply with the form and recordation requirements of ORS 133.545(3) and ORS 133.555(1), we concluded that "the informational basis of the issuing magistrate's action" was insufficient "to satisfy the requirements or the purposes of the code" and, thus, suppression of the evidence based on those statutory violations was warranted. *Id.* at 476.

*Brock* was decided just a few months after *Russell*. In *Brock*, we construed ORS 133.565(3), which restricts execution of search warrants to daytime hours unless the warrant is otherwise "indorsed," as implicitly requiring a showing of special circumstances for a nighttime search. 294 Or at 17-18. Because the warrant in that case had contained an indorsement allowing a nighttime search without a showing of special circumstances, we concluded that the warrant failed to comply with ORS 133.565(3). *Id.* at 21.

The next question was whether to suppress the evidence obtained in execution of a search warrant that was "constitutionally sound" but failed to comply with ORS 133.565(3). *Id.* We determined that it "does not follow that evidence seized in execution of the search warrant must be suppressed," because (1) "[t]*he criminal code itself does not so provide*," and (2) the rule against nighttime searches contained in ORS 133.565(3) was not "designed to protect the individual against the unwarranted seizure of his property or effects as such." *Id.* at 21-22 (emphasis added). Based on "the absence of a statutory directive" and "the character of ORS 133.565(3)," we concluded that "non-compliance with the statute does not give rise to any implications that the state's use of the evidence would vitiate the interest that the statute is intended to protect," and, accordingly, the evidence was admissible. *Id.* at 22.

In *Ingram*, after concluding that the search warrant had failed to comply with the particularity requirements of ORS 133.565(2)(b), we proceeded to consider whether that statutory violation required suppression. 313 Or at 146. We mentioned ORS 133.673 only to observe that that statute "suggests" that some, but not all, statutory violations will result in suppression. *Id.* To determine *which* violations

would result in suppression, we turned to *Davis* for guidance. *Id.* We explained that, under *Davis*, the court looks "'to the character of the rule violated in the course of securing the evidence when deciding whether the rule implies a right not to be prosecuted upon evidence so secured.'" *Id.* (quoting *Davis*, 295 Or at 235 (brackets omitted)).

Following that approach in *Ingram*, we determined that the purpose of ORS 133.565(2)(b) was to "'define the authority of officers * * * to search a person or property.'" *Id.* at 147 (quoting *Davis*, 295 Or at 236). We further noted that ORS 133.565(2) "implements a constitutional right to be free from searches conducted pursuant to warrants that do not particularly describe the persons or places to be searched." *Id.* Because the state would not have secured the evidence "'if its officer had respected the rights that the statute was designed to protect,'" we concluded that, under *Davis*, "suppression of evidence [was] the appropriate remedy for this statutory violation." *Id.* (quoting *Davis*, 295 Or at 236).

*Brock* and *Russell*, admittedly, are not models of clarity as to the analytical path that this court took in reaching its conclusion. But both of those cases, as well as *Ingram*, are consistent with this court's practice, before the enactment of ORS 136.432, of looking to the character or purpose of the violated rule to determine whether, in the absence of an explicit statutory exclusion requirement, the court should nonetheless require exclusion to "give effect" to the statute's purpose. *See Davis*, 295 Or at 236-37 (so describing the court's practice for statutory violations); *Trenary*, 316 Or at 176 (same). In none of those cases did the court rely on ORS 133.673 as the basis for exclusion.[2] If it had, then it would have been unnecessary for the court to examine the purpose of the other statutes that had been violated, and

---

[2] Although the court did not mention ORS 133.673 in *Brock*, that only bolsters the conclusion that this court did not regard ORS 133.673 as a statutory rule of exclusion. The statutory violation in *Brock*, ORS 133.565(3), fell within the purview of ORS 133.673, yet the court determined that the "criminal code itself" did not require suppression of the evidence obtained in violation of ORS 133.565(3). 294 Or at 21. We concluded "from the absence of a statutory directive and from the character of ORS 133.565(3)" that the evidence was admissible. *Id.* at 22. That analysis is irreconcilable with viewing ORS 133.673 as a statutory rule of exclusion.

to determine whether exclusion was necessary to effectuate those purposes.

In short, by the time the legislature passed ORS 136.432 in 1997, ORS 133.673 was not considered a "statutory rule of exclusion" in the sense in which *Thompson-Seed* used that term. That is important because the majority places great weight on the fact that ORS 133.673 existed in 1997, and that the legislature that enacted ORS 136.432 repealed other statutes but left ORS 133.673 alone. The majority infers that the 1997 legislature was aware of ORS 133.673 as a "procedural suppression mechanism" that it intended to leave in place, like the other statutory rules of exclusion discussed in *Thompson-Seed*. 373 Or at 570. But that reasoning ignores the fact that this court had by then construed ORS 133.673 as something *other* than a statutory rule of exclusion. *Ingram*, *Brock*, and *Russell* had all looked beyond ORS 133.673, declining to rely on that statute as an independent source of authority for suppression of evidence.

Based on our case law, the 1997 legislature would have understood ORS 133.673 in the same way that we had treated it: as creating a procedure for resolving motions to suppress where the legislature had expressly provided *elsewhere* for suppression[3] or where the court had decided to infer a suppression remedy to further the purpose of the statute that had been violated. *See Mastriano v. Board of Parole*, 342 Or 684, 693, 159 P3d 1151 (2007) ("[W]e generally presume that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing on those statutes."). And, according to the reasoning that the majority adopts from *Thompson-Seed*, it is the creation of suppression remedies through judicial inference that the legislature intended to stop in 1997 with its enactment of ORS 136.432.

With that in mind, the rule that the majority states by way of "clarifying" the original *Lee* opinion seems, to me, to achieve precisely the wrong result under *Thompson-Seed*. That is, the majority takes pains to emphasize that ORS 133.673 will not lead to suppression for all violations of

---

[3] For example, ORS 133.703, cross-referenced in ORS 133.673, expressly contemplates situations in which evidence may be suppressed.

the statutes cross-referenced in its text; rather, it is for the court to decide whether suppression is a necessary remedy because of the "character of the statutory right violated." 373 Or at 572. But, if *Thompson-Seed* is correct, then this court's inquiry into the "character of the statutory right violated" to determine whether to create a remedy of exclusion, where the legislature did not expressly provide one, is the practice that the 1997 legislature sought to prevent.

The state is right to object that *Lee* has reopened a question that had appeared settled for decades. Defendant in this case never argued that suppression was available on statutory grounds. Presumably, his decision not to make that argument reflects numerous statements from this court since 1997 to the effect that, following the enactment of ORS 136.432, such arguments are unavailing. The majority acknowledges those statements but downplays them as *dicta* or overbroad and contends that none of them concerned ORS 133.673. 373 Or at 561 (citing *State v. Arreola-Botello*, 365 Or 695, 700-01, 451 P3d 939 (2019); *State v. Maciel-Figueroa*, 361 Or 163, 172-73, 389 P3d 1121 (2017); *State v. Watson*, 353 Or 768, 778, 305 P3d 94 (2013); *State v. Rodgers/Kirkeby*, 347 Or 610, 619-21, 227 P3d 695 (2010); *State v. Henderson*, 341 Or 219, 223 n 3, 142 P3d 58 (2006)).

Together, though, those cases reflect an under-standing that, under ORS 136.432, the courts are not free to fashion a remedy of evidentiary exclusion that the legislature has not chosen to provide. It is true that none of those cases squarely holds that ORS 133.673 is not a statutory suppression remedy, and so none of them would pose a *stare decisis* problem for concluding that ORS 133.673 is such a remedy. But the majority does not actually draw that conclusion. Under *Thompson-Seed*, doing so would require explaining how ORS 133.673 either requires exclusion of evidence or prescribes criteria governing the admission or exclusion of evidence, and the majority does not do that.[4] Instead, the majority treats ORS 133.673 as providing only

---

[4] Contrary to the majority's characterization, 373 Or at 563, it is not my contention that a statute must expressly contemplate suppression within its own text to be a statutory rule of exclusion; through cross-referencing, multiple statutes could interact to achieve that result. ORS 133.673 and ORS 133.545(6) simply do not do so.

for a "possibility of statutory suppression" based on the violation of the statutes that it cross-references. 373 Or at 564. Crucially, however, that "possibility" is to be realized not according to whether a particular cross-referenced statute says anything about suppression, but based on this court's assessment of the nature and importance of the violation, and whether a remedy of evidentiary exclusion is necessary based on the "character" of the right violated. Again, that is the very practice that, according to *Thompson-Seed*, the legislature sought to abolish, as consistently reflected in our cases from 1997 until today.[5]

In sum, ORS 133.545(6) sets out certain requirements for issuance of a warrant, but the legislature chose not to require exclusion of evidence obtained in violation of those requirements. Under ORS 136.432, therefore, suppression should be unavailable. The majority's use of ORS 133.673 to create a suppression remedy for violation of ORS 133.545(6), when the legislature itself declined to provide that remedy, is what the legislature intended to prevent when it enacted ORS 136.432. The majority's decision today unsettles decades of case law concerning statutory suppression and the intended function of ORS 136.432. I respectfully dissent.

Duncan and Bushong, JJ., join in this dissenting opinion.

---

[5] The majority asserts that "[n]one of our cases since the enactment of ORS 133.432 have considered the interaction of ORS 133.673 with the statutory subset of ORS 133.525 to ORS 133.703." 373 Or at 563. However, in *State v. Henderson*, 341 Or 219, 223 n 3, 142 P3d 58 (2006), we rejected the argument that a violation of ORS 133.575(3)—a warrant statute within the purview of ORS 133.673—required suppression "because, unless the violation has constitutional dimensions, a statutory violation ordinarily cannot serve as a basis for suppression."